IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2007 MAY -4  P 2: 46

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT, ALA

| | | |
|---|---|---|
| STINNETT GROUP, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  1:06-cv-634-WKW |
| | ) | |
| AUTO OWNERS INSURANCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NARRATIVE SUMMARY OF UNDISPUTED FACTS AND BRIEF OF DEFENDANT/COUNTERCLAIM PLAINTIFF, OWNERS INSURANCE COMPANY INCORRECTLY NAMED IN THE COMPLAINT AS AUTO OWNERS INSURANCE, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

ROGER S. MORROW (MOR032)
JOEL H. PEARSON(PEA019)
Attorneys for Defendant Auto Owners
Insurance, whose true and correct name is
Owners Insurance Company
MORROW, ROMINE & PEARSON, P. C.
122 South Hull Street
P. O. Box 4804
Montgomery, Alabama 36103-4804
Telephone:  (334) 262-7707
Facsimile:   (334) 262-7742

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Narrative Summary of Undisputed Facts and Brief of
Defendant/Counterclaim Plaintiff, Owners Insurance
Company Incorrectly Named in the Complaint as Auto
Owners Insurance, in Support of Motion for Summary
Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

I.   Narrative Summary of Undisputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

III.  Summary Judgment is Due to be Granted
in Favor of Owners Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    A.  Huff & Associates' Claims Against Stinnett
       Group Do Not Constitute an Occurrence and
       Do Not Evoke Coverage for Defense or Indemnity . . . . . . . . . . . . . . . . . . . . .15

          Ajdarodini v. State Automobile Mut. Ins. Co.,
             628 So. 2d 312 (Ala. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

          Allen, Alabama Liability Insurance Handbook,
             § 8-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 17

          Asam v. American Liberty Ins. Co.,
             413 So. 2d 1056 (Ala. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          Auto-Owners Insurance Company v. Gilland-Wyant Imports, Inc.,
             247 F. 3d 248 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . .18, 19

          Auto-Owners Ins., Co., v. Toole,
             947 F. Supp. 1557 (M.D. Ala. 1996) . . . . . . . . . . . . . . . . . . . . . . .17

          Berry v. South Carolina Ins. Co.,
             495 So. 2d 511 (Ala. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

          Carter v. Cincinnati Ins. Co.,
             435 So. 2d 42 (Ala. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

Gary C. Wyatt v. Reliance Ins. Co.,
   540 So. 2d 688, 690, 691 (Ala. 1988) . . . . . . . . . . . . . . . . . . . . . . . 16

Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,
   928 So. 2d 1006, 1012 (Ala. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 19

State Farm Fire and Casualty Ins. Co. v. Shady Grove Baptist Church,
   838 So. 2d 1039 (Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

USF&G v. Warwick Development Co.,
   446 So. 2d 1021 (Ala. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B.  Huff & Associates' Claims Against Stinnett
    Group For Breach Of Contract Are Excluded
    From Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ajdarodini v. State Auto. Mut. Ins. Co.
   628 So. 2d 312 (Ala. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Asam v. American Liberty Ins. Co.,
   413 So. 2d 1056 (Ala. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Carter v. Cincinnati Ins. Co.,
   435 So. 2d 42 (Ala. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

C.  Huff & Associates' Claims Against Stinnett
    Group Do Not Allege Recoverable Damages
    Because of Bodily Injury, Property Damage,
    Advertising Injury or Personal Injury . . . . . . . . . . . . . . . . . . . . . . . . .22

American States Ins. Co. v. Martin,
   662 So. 2d 245 (Ala. 1995) . . . . . . . . . . . . . . . . . . . . .23, 24, 25, 26

Auto-Owners Ins. Co. v. Gilland-Wyant Imports, Inc.,
   247 F. 3d 248 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Auto-Owners Ins. Co. v. Toole,
   947 F. Supp. 1557 (M.D. Ala. 1996) . . . . . . . . . . . . . . . . . . .23, 24

Gunnin v. State Farm Fire and Cas. Co.,
   2007 WL 11005174 (M.D. Ala. 2007) . . . . . . . . . . . . . . . . . . . . . .26

Prince v. Higgins,
   572 So. 2d 1217(Ala. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

ii

Thorn v. American States Ins. Co.,
266 F. Supp. 2d 1346 (M.D. Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . 25

D.  Other Exclusions Are Applicable to
Exclude Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

Berry v. South Carolina Ins. Co.,
495 So. 2d 511 (Ala. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

Garrett v. Auto-Owners Ins. Co.,
689 So. 2d 179 (Ala. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E.  Other Defenses to Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

STINNETT GROUP, LLC )
)
    Plaintiff, )
)
v. )    **CIVIL ACTION NO.: 1:06-cv-634-WKW**
)
AUTO OWNERS INSURANCE, et al., )
)
    Defendants. )

**NARRATIVE SUMMARY OF UNDISPUTED FACTS AND BRIEF OF
DEFENDANT/COUNTERCLAIM PLAINTIFF, OWNERS INSURANCE COMPANY
INCORRECTLY NAMED IN THE COMPLAINT AS AUTO OWNERS INSURANCE, IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Defendant designated in the above-styled action as Auto Owners

Insurance (a trade name) whose true and correct name is Owners Insurance Company

(hereinafter "Owners Insurance"), who is a member of the Auto-Owners Insurance Group

of Companies, and files this narrative summary of undisputed facts and brief in support of

Owners Insurance's motion for summary judgment heretofore filed in this cause as follows,

to wit:

I

**NARRATIVE SUMMARY OF UNDISPUTED FACTS**

    This action is a declaratory judgment action wherein Plaintiff, Stinnett Group, LLC

(hereinafter "Stinnett Group") seeks a determination that a policy of insurance issued to

Stinnett Group by Owners Insurance provides liability insurance for the defense and/or

indemnity for the claims, allegations, damages, actions and/or judgment regarding the

counterclaim in the action styled <u>Stinnett Group, LLC, etc.   v.   Huff & Associates</u>

<u>Construction Company</u>, Civil Action No.: CV-04-797, filed in the Circuit Court of Lee

County, Alabama (hereinafter sometimes referred to as "CV-04-797" or "the underlying action"). See Doc. 1, Ex. 1 at p. 7, ¶ 6. Owners Insurance has filed a counterclaim for declaratory relief and judgment seeking a determination that the policy of insurance issued to Stinnett Group, LLC, does not provide liability insurance coverage for defense or indemnity for the claims, allegations, damages, actions and/or judgment in the underlying action. See, Doc. 2 at p. 7-15.

Jurisdiction is predicated on diversity of citizenship and the amount in controversy pursuant to 28 U.S.C. §1332 and the Federal Declaratory Judgment Act, 29 U.S.C. §2201, et seq. An Answer to the complaint filed by Stinnett Group has been filed by Owners Insurance. See, Doc. 2 at p. 1-7.

On or about December 3, 2004, Stinnett Group, LLC, (hereinafter "Stinnett Group") filed suit in the Circuit Court of Lee County, Alabama, styled Stinnett Group, LLC v. Huff & Associates Construction Co., Inc., CV-04-797 (hereinafter sometimes referred to as "CV-04-797 or the "underlying action"). See, ES Ex. "1" at p. 4.[1] A certified copy of the complaint in CV-04-797 is attached to Owners Insurance's Evidentiary Submission as Exhibit "1" at p. 4-6. On or about January 20, 2005, Defendant, Huff & Associates Construction Co., Inc. (hereinafter Huff & Associates), filed an answer to Stinnett Group's complaint which answer contained a counterclaim. See, ES Ex. "1" at p. 8. A certified copy of the answer and counterclaim of Huff & Associates in CV-04-797 is attached to Owners Insurance's Evidentiary Submission as Exhibit "1" at p. 7-10. The counterclaim

---

[1]The designation "ES" refers to Owners Insurance's Evidentiary Submission filed contemporaneously herewith, the designation "Ex." refers to the exhibit thereof, the designation "p." refers to the page of the exhibit located in the bottom right hand corner of the page, the designation "¶" refers to the paragraph and the designation "L" refers to the line of the designated page.

of Huff & Associates in CV-04-797 alleged that Stinnett Group was liable to Huff & Associates for all damages incurred as a result of Stinnett Group's failure to complete work in accordance with a subcontract between Stinnett Group and Huff & Associates. See, ES Ex. "1" at p. 8 ¶ 4-6. The counterclaim filed by Huff & Associates alleges damages including but not limited to delay damages, liquidated damages, other costs or damages, plus costs, expenses and attorney's fees. See, ES Ex. "1" at p. 8 ¶6. The specific allegations contained in the counterclaim filed by Huff & Associates in CV-04-797 are set forth in Exhibit "1" at p. 8-9 to Owners Insurance's Evidentiary Submission. Huff & Associates filed an amended counterclaim in CV-04-797 on or about May 24, 2005. See, ES Ex. "1" at p. 13. A certified copy of the amended counterclaim of Huff & Associates in CV-04-797 is attached to Owners Insurance's Evidentiary Submission as Exhibit "1" at p. 13-16. Count One of the amended counterclaim in CV-04-797 seeks damages incurred as a result of Stinnett Group's failure to complete work in accordance with a subcontract relating to the Handley High School. See, ES Ex. "1" at p. 13 at ¶'s 1-8. Count Two of the amended counterclaim in CV-04-797 seeks damages incurred as a result of Stinnett Group's failure to complete work in accordance with a subcontract relating to the K A House. See, ES Ex. "1" at p.14 ¶'s 9-16. Thus, it is clear all counts of the Huff & Associates counterclaim are based on breach of contract. The amended counterclaim filed by Huff & Associates in CV-04-797 demands judgment for damages including but not limited to delay damages, liquidated damages, other costs and damages, plus expenses and attorney's fees. See, ES Ex. "1" at p. 13 ¶ 3, p. 14 ¶6, and p. 15 ¶14. The specific allegations contained in the amended counterclaim filed by Huff & Associates in CV-04-797 are set forth in Exhibit "1" at p. 13-16 to Owners Insurance's Evidentiary Submission.

Owners Insurance is an insurance company that from 13 September 2002 to 13 September 2005 had in force an Owners Insurance policy of insurance issued to Stinnett Group, LLC.[2]   The Tailored Protection Policies of insurance contained a Commercial General Liability coverage (CGL) which provided certain insurance coverage, as defined and limited in the policy, against damages that the insured became legally obligated to pay because of bodily injury, property damage, personal injury or advertising injury to which the insurance applies under the CGL coverage.   Said CGL coverage contained a number of limitations, exclusions, conditions and terms.   Attached as Exhibits "2", "3" and "4" to Owners Insurance's Evidentiary Submission are true and correct copies of the above-referenced Tailored Protection Insurance Policies along with the verifying affidavits of Todd Worley for the policy terms from 13 September 2002 to 13 September 2005.   The entire contents of Exhibits "2", "3" and "4" are hereby adopted and incorporated by reference as if fully set forth herein and are referred to for the specific policy language.

The insurance coverage issues referred to above and the obligations of Owners Insurance to either defend or indemnify Stinnett Group with regard to the claims, damages and/or allegations asserted in the Huff & Associates Counterclaim, as amended, in the underlying lawsuit, CV-04-797 are the subject of the complaint (Doc.  1 at Ex.  1 p. 7) and counterclaim (Doc.  2 at p.  7-15) in the above-captioned declaratory judgment action (1:06-cv-634-WKW).   Owners Insurance contends that its policies of insurance do not

---

[2]The Owners Insurance insurance policies for the policy terms 09-13-02 to 09-13-05 are the only policies that could be applicable as the subject subcontracts were entered June 18, 2003 (See, ES Ex. "1" at p.4 ¶ 3 and Ex.  "1" at p.7 ¶ 3) and November 18, 2003 (See, ES Ex."1" at p.5 ¶ 5 and ES Ex.  "1" at p.  7 ¶5) and Huff & Associates' counterclaim alleging damages was served on or about January 20, 2005 (See, ES Ex. "1" at p.7).

provide coverage for all of the claims, damages and/or allegations asserted in the Huff & Associates Counterclaim, as amended, in the underlying lawsuit (CV-04-797). Owners Insurance also contends that the claims, damages and/or allegations asserted or demanded in the counterclaim are excluded by the policy language, terms, conditions and/or exclusions contained in the policy, all of which are adopted by reference. Due to the fact that no coverage exists for defense or indemnity, Owners Insurance has not assumed the defense of Stinnett and has filed this counterclaim for declaratory relief and judgment seeking this Court's determination as to coverage.

Section I, Coverage A of Owners Insurance's Commercial General Liability Coverage contained in the polices in force from 13 September 2002 to 13 September 2005 provides as follows:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments

5

or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS COVERAGES A AND B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2.    Exclusions.**

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.  [CG 00011188]

[See, Doc.  2 at Ex. 1, p. 4; see also, ES Ex. "2" at p.  108, ES Ex.  "3" at p.  110, and ES Ex. "4" at p.  21]

**b.** [As deleted and replaced by Endorsement 55069 (1-88)] "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

6

**(1)**    Assumed in a contract or agreement that is an "insured contract". However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**(2)**    That the insured would have in the absence of the contract or agreement.

[See, Doc. 2 at Ex. 1, p. 18; see also, ES Ex. "2" at p. 124, ES Ex. "3" at p. 125 L18, and ES Ex. "4" at p. 144.]

The Commercial General Liability Coverage (CGL) in the Owners Insurance's policies in force from 13 September 2002 to 13 September 2005 (CG 00011188) defines "bodily injury", "property damage", "occurrence" and "insured contract" as follows:

### SECTION V - DEFINITIONS

\* \* \*

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

\* \* \*

**6.**    "Insured contract" means:

a.    A lease of premises;

b.    A sidetrack agreement;

c.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

7

e.    An elevator maintenance agreement;

f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a.    That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

b.    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (1)    Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    (2)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

c.    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

d.    That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

8

\* \* \*

9.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

12.     "Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

[See, Doc. 2 at Ex. "1", p. 14-15 ¶'s 3, 6, 9 and 12; see also, ES Ex. "2" at p. 118-121 ¶'s 3, 6, 9 and 12; ES Ex. "3" at p. 120-123 ¶'s 3, 6, 9 and 12; ES Ex. "4" at p. 31-34 ¶'s 3, 6, 9 and 12].

Section I, Coverage B, Personal and Advertising Injury, contained in the Commercial General Liability Coverage in force from 13 September 2002 to 13 September 13 2005 (CG 00011188), provides as follows:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

1.      **Insuring Agreement.**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our

9

discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b.    This insurance applies to:

(1)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

[See, Doc. 2 at Ex. 1, p. 7-8; see also, ES Ex. "2" at p. 111-112; ES Ex. "3" at p. 113-114; ES Ex. "4" at p. 24-25].

The Commercial General Liability Coverage (CGL) in the Owners Insurance policy in force from 13 September 2002 to 13 September 2005 (CG 00011188) defines "advertising injury" and "personal injury" as follows:

10

**SECTION V - DEFINITIONS**

1.    "Advertising injury" means injury arising out of one or more of the following offenses:

    **a.**    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **b.**    Oral or written publication of material that violates a person's right of privacy;

    **c.**    Misappropriation of advertising ideas or style of doing business; or

    **d.**    Infringement of copyright, title or slogan.

* * *

10.    "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e.    Oral or written publication of material that violates a person's right of privacy.

[See, Doc. 2 at Ex. 1, p. 14 and 16; see also, ES Ex. "2" at p. 118 ¶ 1 and p. 120 ¶ 10; ES Ex. "3" at p. 120 ¶ 1 and p. 122 ¶ 10; ES Ex. "4" at p. 31 ¶1 and p. 33 ¶ 10].

11

As stated above, Stinnett Group has filed its complaint for declaratory judgment (Doc. 1, Ex. 1 at p. 7-8) herein seeking a determination that Owners Insurance's policy provides liability insurance for defense and/or indemnity for the claims, damages and/or allegations asserted in the Huff & Associates counterclaim, as amended, in the underlying lawsuit (CV-04-797). Owners Insurance has not assumed the defense of Stinnett and has filed this counterclaim for declaratory relief and judgment seeking the Court's determination as to coverage due to the fact that no coverage exists for defense or indemnity with regard thereto. (See, Doc. 2 at p. 7-15).

## II

## STANDARD OF REVIEW

Rule 56 of the *Federal Rules of Civil Procedure* concerning summary judgment states, in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). The Eleventh Circuit has followed the direction provided by Rule 56 saying, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). An issue of material fact is "genuine" only if "a reasonable trier of fact, considering the record evidence, could find for the non-moving party." Lee v. Etowah County Bd. Of Educ., 963 F.2d 1416, 1425 (11th Cir. 1992). The party seeking summary judgment "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995); Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995). A party may not defeat a motion for summary judgment simply by restating the allegations of the pleadings. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A court ruling on a motion for summary judgment must believe the evidence of the non-movant and draw all justifiable inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis by the Court). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Id. at 249. A fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. Id. at 248; accord, Anderson v. Southern Ductile Casting Corp., 869 F. 2d 1372, 1376 (11th Cir. 1988).

"An insurance company's duty to defend its insured from suit is usually determined by the language of the insurance policy and by the allegations in the complaint filed against

the insured." Auto-Owners Ins. Co. v. Toole, 947 F. Supp 1557 (M.D.Ala. 1996) (quoting,

Alfa Mutual Ins. Co. v. Morrison, 613 So. 2d 381, 382 (Ala. 1993)); see also, Thorn v.

American States Ins. Co., 266 F. Supp.2d 1346 (M.D. Ala. 2002); Ladner & Co., Inc. v.

Southern Guaranty Ins. Co., 347 So. 2d 100, 102 (Ala. 1977). Insurance companies have

the right to limit their liability. See Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co.,

Inc., 289 Ala. 719, 272 So. 2d 232 (Ala. 1972). Under Alabama law, the insured bears the

burden of establishing coverage by demonstrating that a claim falls within the policy. See

Colonial Life & Acc. Ins. Co. v. Collins, 194 So. 2d 532, 535 (Ala. 1967). If there is no

ambiguity, an insurance contract must be enforced as written, and courts should not defeat

expressed provisions in a policy, including exclusions from coverage, by making a new

contract for the parties. See Altiere v. Blue Cross and Blue Shield, 551 So. 2d 290, 292

(Ala. 1989).

III.

## SUMMARY JUDGMENT IS DUE TO BE GRANTED IN FAVOR OF OWNERS INSURANCE

The insurance coverage issues referred to above and the obligations of Owners

Insurance to either defend or indemnify the Stinnett Group as to the claims, damages,

actions and/or allegations asserted in the Huff & Associates counterclaim, as amended,

in the underlying lawsuit, CV-04-797, are the subject of the complaint for declaratory

judgment filed by Stinnett Group (Doc.  1, Ex. "1" at p. 7-8) and the counterclaim for

declaratory relief and judgment filed by Owners Insurance (Doc.  2 at p.  7-15) in the

above-captioned action pending herein.  For the reasons that follow, Owners Insurance

contends that its policies of insurance do not provide liability insurance coverage for

14

defense or indemnity for the claims, damages, actions and/or allegations asserted or demanded in the Huff & Associates counterclaim, as last amended, (Doc. 2, Ex. "4" at p. 2-5; ES Ex. "1" at p. 13-16) filed in the underlying lawsuit (CV-04-797).

### A.    Huff & Associates' Claims Against Stinnett Group Do Not Constitute An Occurrence And Do Not Evoke Coverage For Defense Or Indemnity

Section I, Coverage A of the Owners Insurance Commercial General Liability Coverage expressly states in the insuring agreement that the insurance applies to bodily injury and property damage only if the bodily injury or property damage is "caused by an occurrence that takes place in the coverage territory" and only if "the bodily injury or property damage occurs during the policy period."    An "occurrence" is defined in the Commercial General Liability Coverage of the Owners Insurance policy as follows:

### SECTION V - DEFINITIONS

* * *

9.    "Occurrence" means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

[See, ES Ex. "2" at p. 120 ¶ 9].

Thus, the insuring agreement of the Owners Insurance policy provides that coverage is only available for damages because of bodily injury or property damage caused by an occurrence (i.e., an accident). The occurrence language in an insurance policy is a fortuity requirement. Allen, Alabama Liability Insurance Handbook, § 8-1. Accidental injury or damage is required by definition and the occurrence language is a fundamental and material fact of the insuring agreement. Also, the occurrence or fortuity requirement is

15

contained in the insuring agreement, therefore, the insured has the burden of proving by substantial evidence that its claimed loss or damage falls within the coverage of the policy. State Farm Fire and Casualty Ins. Co. v. Shady Grove Baptist Church, 838 So. 2d 1039 (Ala. 2002). Section I, Coverage A, Exclusion 2.a. of the CGL coverage further states that, "this insurance does not apply to bodily injury or property damage expected or intended from the standpoint of the insured".

The CGL coverage is not a "warranty". Section I, Coverage A of the CGL coverage does not insure against poor workmanship or defective work or product. Section I, Coverage A of the CGL coverage only provides coverage for "bodily injury" or "property damage" occurring in the policy period and resulting from an occurrence, an accident, arising from such defects and/or poor workmanship. See, Berry v. South Carolina Ins. Company, 495 So. 2d 511 (Ala. 1985); USF&G v. Warwick Development Co., 446 So. 2d 1021 (Ala. 1984).

The claims in the Huff & Associates counterclaim, as last amended, in the underlying action (CV-04-797) expressly state that the claims are for "failure to properly perform under the terms of its [Stinnett Group's] contract and in breach thereof." See, ES Ex. "1" at p. 14 ¶ 4 and p.15 at ¶ 12. Under Alabama law, breach of contract does not constitute an occurrence. See, Gary C. Wyatt v. Reliance Ins. Co., 540 So. 2d 688, 690-691 (Ala. 1988); see also, Ajdarodini v. State Automobile Ins. Co., 628 So. 2d 312 (Ala. 1993). Furthermore, and as stated in the following section (C.), Owners Insurance's policies do not provide coverage for pure economic loss occurring from a breach of contract, and purported economic loss or damage to intangible property is not "property damage" as defined in the policies. As set forth in further detail in the following section of

16

this brief the Commercial General Liability Coverage also contains a contractual liability exclusion [exclusion 2.b. deleted and replaced by endorsement 55069 (1-88)]. <u>See</u>, Doc. 2, Ex. "1" at p. 18; <u>see also</u>, ES Ex. "2" at p. 124. Alabama appellate courts have consistently held that such exclusion excludes coverage for counts alleging breach of contract. <u>See</u>, <u>Ajdarodini v. State Auto. Mut. Ins. Co.</u>, 628 So. 2d 312 (Ala. 1993) (counts alleging breach of construction contract were excluded from coverage as liability assumed under a contract); <u>Asam v. American Liberty Ins. Co.</u>, 413 So. 2d 1056 (Ala. 1982) (no coverage under charge that the insured breached his contract to feed, water, and care for certain research mice); <u>Carter v. Cincinnati Ins. Co.</u>, 435 So. 2d 42 (Ala. 1983) (count alleging breach of contract for insured's failure to comply with terms of a contract made in consideration of the plaintiff not bringing an action for alleged injuries were not covered because of exclusion related to liability assumed by the insured under any contract or agreement).

The occurrence language in an insurance policy is a fortuity requirement. <u>Allen, Alabama Liability Insurance Handbook</u>, §8-1. Accidental injury or damage is required by definition and the occurrence language is a fundamental and material fact of the insuring agreement. The type contractual breaches and wrongful conduct regarding obligations and actions concerning the subcontract between Huff & Associates and Stinnett Group which is the subject of the Huff & Associates counterclaim do not, as a matter of law, constitute an occurrence.

In determining whether allegations relating to the sale and financing of motor vehicles should be viewed as an "occurrence" as defined in an Auto-Owners policy, this Court held in <u>Auto-Owners Ins., Co., v. Toole</u>, 947 F. Supp. 1557 (M.D. Ala. 1996), that

17

"the court should look to the kind of claim being asserted... ." Id. at 1546. The Court in

Toole stated:

> [I]n determining whether there is coverage, the court should look to the specific 'kind of ... claim' being asserted, regardless as to whether it is labeled a contract claim, a tort claim, or whatever, and the 'purpose of the general liability policy' from which coverage is sought. City of Burlington, 655 A.2d at 722.
>
> Here, counts ten and eleven are based on the sale and financing of motor vehicles. As stated, the counts essentially assert claims arising out of a business dispute, albeit in the context of a consumer contractual transaction. The court believes that the following comments best explain why the events giving rise to the counts should not be viewed as occurrences: 'To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation.
> ***
> It is apparent from a reading of the policies between Auto-Owners and Toole that they were not intended to cover business transactions and business ventures, of a consumer nature or of another kind.
>
> ***
>
> There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions." Id. at p. 1546. (emphasis supplied).

Thus, in Toole, the Court held that allegations relating to the sale and financing of

motor vehicles did not constitute an "occurrence". Id. Similarly, in Auto-Owners Ins. Co.

v. Gilland-Wyant Imports, Inc., Civil Action No. 99-A-403-S, Judge Albritton, relying in part

on <u>Toole</u>, held that claims relating to the financing, title and liens on vehicles did not fall within the identical policy definition of an "occurrence".  In <u>Auto-Owners v. Gilland-Wyant</u>, which is attached hereto as Exhibit "A", Judge Albritton stated:

> So, to require Auto-Owners to defend the Gilland-Wyant Defendants in the underlying state court action would make Auto-Owners a silent business partner without any possibility of reward. Making Auto-Owners liable would essentially 'distort the purpose of the liability insurance [policy] in this case... .' <u>Toole</u>, 947 F. Supp. at 1564.  General Liability insurance covers accidental injury or property damage, not business disputes, whether intentionally or negligently caused. Consequently, the Court finds that the claims alleged in the underlying state court action in Counts One through Seven do not fall within the policy definition of an ' occurrence'. Accordingly, the claims fall outside the scope of coverage and Auto-Owners' motion for summary judgment is due to be granted... .'

<u>Id</u>. at p. 15 L 10; aff'd 247 F. 3d 248 (11th Cir.  2001). <u>See</u> <u>also</u>, <u>Hartford Cas. Ins. Co. v. Merchants & Farmers Bank</u>, 928 So.  2d 1006, 1012 (Ala. 2005) (allegations that a bank had taken control of property and money of Plaintiff did not constitute an accident or occurrence that would trigger a duty to defend).

The claims of Huff & Associates in the underlying action expressly allege breach of subcontracts and simply do not allege an 'occurrence' (i.e., an accident) as defined in the Owners Insurance policy, and judgment as a matter of law is, therefore, due to be entered in favor of Owners Insurance Company.

### B.    Huff & Associates' Claims Against Stinnett Group For Breach Of Contract Are Excluded From Coverage

The CGL coverage of the Owners Insurance insurance polices each contain Exclusion 2.b. [as deleted and replaced by Endorsement 55069 (1-88) Contractual Coverage Amendatory Endorsement] which provides:

2.    **Exclusions.**

This insurance does not apply to:

* * *

b.    [As deleted and replaced by Endorsement 55069 (1-88)] "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    Assumed in a contract or agreement that is an "insured contract". However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

(2)    That the insured would have in the absence of the contract or agreement.

[See, Doc. 2 at Ex. 1, p. 18; see also, ES Ex. "2" at p. 124, ES Ex. "3" at p. 125 L18, and ES Ex. "4" at p. 144.]

The CGL coverage of the Owners Insurance policies define an "insured contract" as follows:

6.    "Insured contract" means:

a.    A lease of premises;

b.    A sidetrack agreement;

c.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

20

    e.      An elevator maintenance agreement;

    f.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

    a.      That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    b.      That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (1)    Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

        (2)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    c.      Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

    d.      That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

The contracts between Stinnett Group and Huff & Associates which Huff & Associates alleges in its counterclaim was breached is not an "insured contract" but rather contracts between Stinnett Group and Huff & Associates for "certain heating, air conditioning and ventilating services and construction." See, ES Ex. "1"at p. 4 ¶ 3 and p. 5 at ¶ 5. Alabama appellate courts have consistently held that exclusions like that contained in the Owners Insurance policy and set forth above exclude coverage for counts alleging breach of contract. See, Ajdarodini v. State Auto. Mut. Ins. Co., 628 So. 2d 312 (Ala. 1993) (counts alleging breach of construction contract were excluded from coverage as liability assumed under a contract); Asam v. American Liberty Ins. Co., 413 So. 2d 1056 (Ala. 1982) (no coverage under charge that the insured breached his contract to feed, water, and care for certain research mice); Carter v. Cincinnati Ins. Co., 435 So. 2d 42 (Ala. 1983) (count alleging breach of contract for insured's failure to comply with terms of a contract made in consideration of the plaintiff not bringing an action for alleged injuries were not covered because of exclusion related to liability assumed by the insured under any contract or agreement).

Thus, the Owners Insurance policies exclude coverage for Huff & Associates' counterclaim against Stinnett Group alleging breach of contract, and judgment as a matter of law is due to be entered in favor of Owners Insurance.

### C.  Huff & Associates' Claims Against Stinnett Group Do Not Allege Recoverable Damages Because of Bodily Injury, Property Damage, Advertising Injury or Personal Injury

The Owners Insurance Commercial General Liability coverage only provides coverage for damages because of bodily injury, property damage, personal injury or

advertising injury to which the insurance applies as defined and limited in the particular coverage contained in the policies. Previously set forth in this brief are pertinent sections of the Owners Insurance policies quoting the liability coverages contained therein. See, p.5-11, *infra*; see also, ES Exs. "2", "3" and "4". Not only does the Huff & Associates counterclaim in CV-04-797 allege claims which are not an "occurrence" and are excluded from coverage as set forth above, the counterclaim also does not allege damages that could be covered under any liability coverage contained in the Owners Insurance policies. The causes of action set forth in the Huff & Associates counterclaim in the underlying action (CV-04-797) are denominated in Count One as an action based on Handley High School Subcontract (See, Doc. 2, Ex. "4" at p. 3; ES Ex. "1" at p. 13), and in Count Two as an action based on KA House [Subcontract]. See, Doc. 2, Ex. "4" at p. 3; ES Ex. "1" at p. 14-15. All claims are, therefore, based on a breach of contract. As a matter of law, the damages alleged in the Huff & Associates counterclaim in CV-04-797 are in the nature of purely economic losses or damages to intangible property which do not, as a matter of law, fall within the definition of property damage. See, e.g., American States Ins. Co. v. Martin, 662 So. 2d 245 (Ala. 1995).[3]

In Auto-Owners Ins. Co. v. Toole, supra, this Court considered a declaratory judgment action regarding coverage under a similar Auto-Owners policy for state law claims relating to the sale and financing of automobiles. Granting summary judgment in favor of Auto-Owners and finding that the complaint in the underlying action did not allege

---

[3] It is undisputed that the counterclaim in CV-04-797 does not allege bodily injury caused by an "occurrence", or an advertising injury or personal injury offense and thus, does not claim damages because of bodily injury, advertising injury or personal injury. (See, Doc. 2, Ex. 1 at p. 14 and 16).

23

"property damage" within the meaning of the policies, the Court stated:

> T]he court also agrees with Auto-Owners that the claims in counts ten and eleven do not involve "property damage" within the meaning of the policies. "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property ... [or] [l] oss of use of tangible property that is not physically injured." The Alabama Supreme Court has accepted the following definitions of "tangible property" and "intangible property":
>
> " 'Tangible property is that which may be felt or touched; such property as may be seen, physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like. Tangible property must necessarily be corporeal, but it may be either real or personal.
>
> " 'Intangible property is property which has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. Intangible property is quite different in nature from corporeal property, and there is an obvious distinction between tangible property and intangible property. Intangible property is held secretly; that is, it cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs, except, perhaps, in the case of mortgages or shares of stock. The value of intangible property is not easily ascertained.'"
>
> American States Ins. Co. v. Martin, 662 So. 2d 245, 248 (Ala. 1995) (quoting 73 C.J.S. Property § 15 at 184 (1983)). Because the damages that the state plaintiffs seek pursuant to counts ten and eleven are not for injury to tangible property, that is property "which may be felt or touched," the damages are not included within the definition of tangible property.

Thus, this Court held in Toole that similar events "should not be viewed as 'occurrences'", and did "not involve 'property damage,' within the meaning of the policies." See, Toole, 947 F. Supp at 1564. The underlying claims of the Huff & Associates counterclaim simply do not allege property damage as defined in the policy. American

24

States Ins. Co. v. Martin, 662 So. 2d 245 (Ala. 1995) is absolute authority based on sound Alabama Supreme Court precedent that any purported economic loss or damage to intangible property by Huff & Associates are not "property damage" as defined in the policies.

In American States Ins. Co. v. Martin, 662 So. 2d 245 (Ala. 1995) the Alabama Supreme Court held that loss of security instruments on real property in which funds were invested and on which second mortgages were held was not a loss of "tangible property" and noted that the complaint did not allege the property was physically damaged. See, id. at 249. A similar conclusion was reached by the Eleventh Circuit in an unpublished opinion in Auto-Owners Ins. Co. v. Gilland-Wyant Imports, Inc., 247 F. 3d 248 (11th Cir. 2001) where the Eleventh Circuit held that loss of economic value related to a car dealership's falsified paperwork on vehicles did not qualify as "property damage". A copy of the district court opinion and appellate court opinion are attached hereto as Exhibit "A".

The amended counterclaim in CV-04-797 (Doc. 2, Ex. "6"; ES Ex. "1" at p. 13-16) in essence seeks economic loss damages for breach of contract. This is not damage to tangible property. The Owners Insurance policy is clear that coverage is not triggered under coverage A unless there are allegations of bodily injury or property damage caused by an occurrence. The underlying Huff & Associates counterclaim in CV-04-797 does not make claims for bodily injury or property damage as defined in the Owners Insurance policy. Any damages alleged by the Huff & Associates such as "delay damages, liquidated damages or other costs . . ." are non-covered economic losses. See, e.g., ES Ex. "1" at p. 14 ¶ 6 and p.15 ¶14. The Alabama Supreme Court and this Court have held that the loss of money does not qualify as property damage. See, Thorn v. American States Ins.

Co., 266 F. Supp. 2d 1346 (M.D. Ala. 2002), quoting, American States Ins. Co. v. Martin, 662 So. 2d 245 (Ala. 1995); see also, Prince v. Higgins, 572 So. 2d 1217, 1219 (Ala. 1990)("'Tangible personal property' is not an ambiguous term. 'Tangible property' has a specific legal definition: 'Tangible property'. That which may be felt or touched, and is necessarily corporeal, although it may be either real or personal"). Chief United States District Judge Mark Fuller recently reached the same conclusion in Gunnin v. State Farm Fire and Cas. Co., 2007 WL 1100517*4 (M.D. Ala. 2007) holding that "[u]nder Alabama law, losses of income and business are not considered tangible property damage." Judgment as a matter of law in favor of Owners Insurance is, therefore, due to be granted because the claims, damages, allegations and/or actions alleged in the underlying actions are not for a covered damage.

D.     **Other Exclusions Are Applicable to Exclude Coverage**

The CGL coverage of the Owners Insurance policy also contains the following exclusions:

j.     "Property damage" to:

(1)     Property you own, rent or occupy;

(2)     Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)     Property loaned to you;

(4)     Personal property in the care, custody, or control of the insured;

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

26

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.     "Property damage" to "your product" arising out of it or any part of it.

l.     "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.     "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.     Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property";

27

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Even if the Huff & Associates counterclaim alleged claims which were not excluded by the contractual coverage exclusionary endorsement, and alleged an "occurrence" (i.e., an accident), and alleged "property damage" (i.e., damage to tangible property), the above exclusions would apply to exclude coverage. As stated above, the CGL policy is not a "warranty" and the CGL policy does not insure against poor workmanship or defective work or products. Property damage that occurred before operations were completed, while the property was owned by Stinnett Group or, while the work was being performed or arising out of Stinnett Group's operations is not covered. See, exclusion j(5) and (6). The Owners Insurance CGL policy excludes coverage for property damage to the "insured's work", the "insured's product", and "impaired property" that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition to the insured's work or product or caused by a breach of contract. See, exclusions k, I and m. See, Garrett v. Auto-Owners Ins. Co., 689 So. 2d 179, 181 (Ala. 1997) (insurance policy did not cover damage to work of the insured); Berry v. South Carolina Ins. Co., 495 So. 2d 511, 513 (Ala. 1985) (affirming trial court summary judgment that insurance policy did not apply to property damage related to work done pursuant to the contract).

Thus, even if the counterclaim alleged an occurrence, summary judgment in favor of Owners Insurance is due to be granted because the counterclaim does not allege a covered damage.

### E.    Other Defenses to Coverage

In addition to the foregoing, Owners Insurance has set forth in Owners Insurance's counterclaim for Declaratory Relief and Judgment additional secondary reasons compelling a finding of no coverage for defense or indemnity under the Owners Insurance policies. In setting forth the grounds herein, which Owners Insurance asserts are fully dispositive of this action, Owners Insurance does not waive any other grounds set forth by Owners Insurance in support of its counterclaim for Declaratory Relief and Judgment and which support Owners Insurance's motion for summary judgment.

## IV.

## CONCLUSION

For the reasons set forth in the foregoing brief and in Owners Insurance Company's Motion for Summary Judgment, Owners Insurance requests this Honorable Court to enter summary judgment in favor of Owners Insurance pursuant to Rule 56(c) of the *Federal Rules of Civil Procedure* and against Plaintiff/Counterclaim Defendant Stinnett Group as to Stinnett Group's complaint herein and in favor of Owners Insurance for the relief demanded in Owners Insurance's counterclaim for declaratory relief and judgment.

Dated this the _____ day of _____, 2007.

_____
ROGER S. MORROW (MOR032)

_____
JOEL H. PEARSON (PEA019)
**Attorneys for Defendant Auto Owners
Insurance, whose true and correct name is
Owners Insurance Company**

29

**OF COUNSEL:**

**MORROW, ROMINE & PEARSON, P. C.**
**122 South Hull Street**
**P. O. Box 4804**
**Montgomery, Alabama 36103-4804**
**Telephone:  (334) 262-7707**
**Facsimile:   (334) 262-7742**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the following by placing a copy of same in the United States mail, first class postage prepaid on this the ___4th___ day of ___May_____, 2007.

Hon. J. E. Sawyer, Jr.
203 S. Edwards Street
Enterprise, Alabama 36330

_____
OF COUNSEL

30