# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

MAR 20 2000

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF
MONTGOMERY, ALA.

AUTO-OWNERS INSURANCE COMPANY, )
a mutual insurance company incorporated in )
the State of Michigan, )
                         )
           Plaintiff, )
                         )
vs. )     CIVIL ACTION NO. 99-A-403-S
                         )
GILLAND-WYANT IMPORTS, INC., an )
Alabama corporation; JOHN GILLAND, an )
individual; MARK WYANT, an individual; )
QUENTIN UMPHREY, a/k/a QUINTON G. )
UMPHREY, an individual; GREGORY )
SUTTON, an individual; BILL WILKES, )
an individual; ARMY AVIATION CENTER )
FEDERAL CREDIT UNION, a federally )
chartered credit union, )
                         )
           Defendants. )

## ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on this date, it is the ORDER,

JUDGMENT, and DECREE of this court that:

1. The Motion to Correct the Spelling of Defendant Quinton G. Umphrey's Name (Doc.

#22) is GRANTED.

2. The Motion of Plaintiff for Judgment by Default Against Certain Defendants (Doc.

#38) is GRANTED, and default judgment is entered against the Defendant Gilland-Wyant

Imports, Inc. and Quinton G. Umphrey (a/k/a Quentin Umphrey).

3. The Motion of Plaintiff for Summary Judgment (Doc. #39) is GRANTED, and

Judgment is entered in favor of the Plaintiff and against the Defendants.

EOD 3-20-00

4. It is DECLARED that Plaintiff Auto-Owners Insurance Company has no duty to defend, and no duty to indemnify, Defendant Gilland-Wyant Imports, Inc., John Gilland, Mark Wyant, Quinton G. Umphrey (a/k/a Quentin Umphrey), Gregory Sutton, or Bill Wilkes for any of the claims presently alleged in that certain civil action presently pending in the Circuit Court for Houston County, Alabama in which they are Defendants and Army Aviation Center Federal Credit Union is Plaintiff, being Civil Action No. CV-97-516A.

5. The Motion to Strike Affidavits (Doc. #59) is DENIED as moot.

6. Costs are taxed against the Defendants.

DONE this 20th day of March, 2000.

W. HAROLD ALBRITTON
CHIEF UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

F I L E D

MAR 2 0 2000

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF AL
MONTGOMERY, AL.

|  |  |  |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY,<br>a mutual insurance company incorporated in<br>the State of Michigan,<br><br>Plaintiff,<br><br>vs.<br><br>GILLAND-WYANT IMPORTS, INC., an<br>Alabama corporation; JOHN GILLAND, an<br>individual; MARK WYANT, an individual;<br>QUENTIN UMPHREY, a/k/a QUINTON G.<br>UMPHREY, an individual; GREGORY<br>SUTTON, an individual; BILL WILKES,<br>an individual; ARMY AVIATION CENTER<br>FEDERAL CREDIT UNION, a federally<br>chartered credit union,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 99-A-403-S |

## MEMORANDUM OPINION

## I. INTRODUCTION

This case is before the court on several motions. Plaintiff Auto-Owners Insurance Co.

("Auto-Owners") filed a Motion of Plaintiff for Summary Judgment (Doc. #39) on December 27,

1999. Prior to the Motion for Summary Judgment, Auto-Owners filed a Motion of Plaintiff for

Judgment by Default Against Certain Defendants (Doc. #38) on December 27, 1999, seeking an

entry of judgment of default against Defendant Quentin Umphrey, a/k/a Quinton G. Umphrey

("Umphrey"),[1] Defendant Gilland-Wyant Imports, Inc. ("Gilland-Wyant"), and Defendant

---

[1]There is a Motion to Correct the spelling of Defendant Quinton G. Umphrey's name
(Doc. #22) filed by Auto-Owners on September 30, 1999. The motion to correct the spelling of
Umphrey's name is due to be GRANTED.

Gregory Sutton ("Sutton").[2] Also before this court is a Motion to Strike Affidavits (Doc. #59) filed by Auto-Owners on February 3, 2000.

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Auto-Owners filed a Complaint for Declaratory Judgment on April 22, 1999, seeking a declaration that it had no duty to defend or indemnify Gilland-Wyant or its agents, in an underlying state court action. Defendant Army Aviation Center Federal Credit Union ("Army Aviation") filed an Answer on May 17, 1999. Defendant Bill Wilkes ("Wilkes") filed an Answer on May 25, 1999. Defendant John Gilland ("Gilland") filed an Answer on May 27, 1999. Auto-Owners filed a Request for Entry of Default of Defendants Gilland-Wyant Imports, Inc. and Quinton G. Umphrey on September 30, 1999. On October 22, 1999, Debra P. Hackett, Clerk of the United States District Court of the Middle District of Alabama entered default against Gilland-Wyant and Umphrey. On October 22, 1999, Auto-Owners filed a Motion of Plaintiff for Leave to Amend Complaint and to Add Mark Wyant as a Party Defendant. This Motion was granted on November 16, 1999. Also on November 16, 1999, Auto-Owners filed its Amended Complaint for Declaratory Judgment. On December 22, 1999, Wyant filed a Motion to Dismiss. On January 11, 2000, Wyant's Motion was Denied. Wyant filed an Answer on January 20, 2000.

On December 27, 1999, Auto-Owners filed a Motion for Summary Judgment, a Motion for Judgment by Default Against Certain Defendants, and also a Brief in Support of Motion of Plaintiff for Judgment by Default, and Motion for Summary Judgment ("Pl. Br."). On January 19, 1999, Wilkes filed a Brief in Opposition to Motion for Summary Judgment ("Wilkes Br."). Army Aviation filed a Brief in Opposition to the Plaintiff's Motion for Summary Judgment

---

[2]Default was entered against Sutton by Yvonne Goodloe, Chief Deputy Clerk for the Middle District of Alabama, on February 29, 2000.

2

("A.A. Br.") on January 25, 1999.  On January 26, 2000, Gilland filed a Brief in Opposition to

Plaintiff Auto-Owners' Motion for Summary Judgment ("G. Br.").  On January 31, 2000, Wyant

filed a Brief in Opposition to the Plaintiff's Motion for Summary Judgment ("Wyant Br.").  On

February 1, 2000, Auto-Owners filed a Reply Br. of Plaintiff ("Pl. Reply Br.").  Finally, on

February 3, 2000, Auto-Owners filed a Supplemental Reply Brief of Plaintiff ("Supp. Pl. Reply

Br.").

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Id. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute

of material fact, or by showing, or pointing out to, the district court that the nonmoving party has

failed to present evidence in support of some element of its case on which it bears the ultimate

burden of proof.  See id. at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to

go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

3

issue for trial.'" Id. at 324.  To avoid summary judgment, the nonmoving party "must do more

than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the

nonmovant must be believed and all justifiable inferences must be drawn in its favor.  See

Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

　　　After the nonmoving party has responded to the motion for summary judgment, the court

must grant summary judgment if there is no genuine issue of material fact and the moving party

is

entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).


## III. FACTS

　　　The submissions of the parties establish the following facts, in the light most favorable to

the non-movant:

　　　Auto-Owners insured Gilland-Wyant and Gilland Wyant Truck Center from November 1,

1994 through November 1, 1995.  Auto-Owners then insured JEG, Inc., d/b/a Gilland Isuzu-

Subaru-Suzuki ("JEG"), from November 1, 1995 through the date of cancellation on April 26,

1996.  An identical Tailored Protection Policy covered both Gilland-Wyant and JEG.  The

Tailored Protection policy ("policy") contained a Commercial General Liability coverage and a

Garage Liability coverage with a number of provisions covering personal or bodily injury and

property damage.  The policy also contained a number of exclusions.[3]

---

　　　[3]The specific provisions and exemptions that are applicable to this case will be discussed
in relevant part in the Discussion section of this Memorandum Opinion.

On August 18, 1997, Army Aviation filed suit against Gilland-Wyant, Wyant, Gilland, Umphrey, Wilkes, Sutton, and other parties, in the Circuit Court of Houston County, Alabama. See Army Aviation Center Federal Credit Union v. Gilland-Wyant Imports, Inc., et al., Civil Action No. CV-97-516h (hereinafter "state court action"). On January 16, 1999, Army Aviation filed an amended complaint in the state court action. Under reservation of rights Auto-Owners is currently providing a defense to Gilland-Wyant, Gilland, Wyant, Umphrey, Sutton and Wilkes in the state court action.

Auto-Owners is seeking a declaratory judgment that the insurance policy Auto-Owners issued to Gilland-Wyant and JEG "[does] not provide liability insurance coverage for the claims, allegations, damages, and/or actions alleged" in the Army Aviation state court action. Pl. Br. at 2.

## IV. DISCUSSION

### A. Default

Auto-Owners also moves for default judgment against Gilland-Wyant, Umphrey, and Sutton. Because default has been entered against all three of these defendants, and because these defendants have not answered or otherwise defended in this case, default judgment is due to be entered against them.

### B. Duty to Defend

An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured. See Guaranty National Insurance Company v. Beeline Stores, Inc., 945 F. Supp. 1510, 1513 (M.D. Ala. 1996) [hereinafter "Guaranty"]; see also United States Fidelity & Guaranty Co. v. Armstrong, 479 So.2d 1164 (Ala. 1985). If the allegations accuse the insured of actions for

5

which the insurance policy provides coverage, the insurance company is obligated to defend the

insured. See Chandler v. Alabama Mun. Ins. Co., 585 So.2d 1365, 1367 (Ala. 1977); see also

Ladner & Co. v. Southern Guaranty Ins. Co., 347 So.2d 100 (Ala. 1977). The court is not

limited to the bare allegations of the complaint in cases where the "allegations of the complaint

show that no injury alleged is within the coverage of the policy . . . or where the allegations are

ambiguous." See Guaranty, 945 F. Supp. at 1513. In this situation, the court "may also look to

facts which may be proved by admissible evidence" to determine if the insurance company owes

a duty to defend. See Chandler, 585 So.2d at 1367.

Under Alabama law, the Defendants bear the burden of establishing that the claims in the

underlying state court action fall within the policy coverage. See Colonial Life & Accident Ins.

Co. v. Collins, 194 So.2d 532, 535 (Ala. 1967). Auto-Owners, however, bears the burden of

proving the applicability of any policy exclusion. See U.S. Fidelity, 479 So.2d 1168. Generally,

an insurance contract should be enforced as written. See Altiere v. Blue Cross & Blue Shield,

551 So.2d 290, 292 (Ala. 1989). However, if an insurance policy is ambiguous it must be

"construed liberally in favor of the insured, and exceptions to coverage must be interpreted as

narrowly as possible in order to provide maximum coverage to the insured." Guaranty, 945 F.

Supp. at 1513 (citing Altiere, 551 So.2d at 292).

Thus, in order to determine whether Auto-Owners owes the Gilland-Wyant Defendants a

duty to defend depends on the nature of the claims in the underlying state court action and

whether the policy contained any applicable exceptions to coverage. The court first turns its

attention to the claims made by Army Aviation in the underlying state court suit.[4]

---

[4]The court addresses only the first seven claims in the Amended Complaint in this
section. Because Count Eight of the Amended Complaint only concerns Wyant, the court

6

In Count One, Army Aviation alleges that Gilland-Wyant "negligently or fraudulently

failed to file the title applications and supporting documents on . . . eight new vehicles with the

State of Alabama within a reasonable time . . . ." Amended Complaint ¶ 2. This count also

alleges that Gilland-Wyant, Gilland, Wyant and Umphrey "negligently failed to supervise

Defendants Wilkes, Sutton and others" during these transactions. Id. Finally, this count alleges

that Wilkes and Sutton, in the scope of their employment, "negligently, wantonly or intentionally

failed to properly and timely deliver title documents to the State of Alabama." Id. Army

Aviation argues that because of these actions Army Aviation has not been able to perfect the lien

on four vehicles it financed and has spent large sums of money obtaining perfected liens on the

other four cars it financed. See id. ¶ 3 (a) & (b).

Count Two alleges that Gilland-Wyant, Gilland and Umphrey "negligently failed to

supervise and control Wyant" with regard to Umphrey's purchase of a 1933 Ford Cabriolet, VIN

No. 18339774. Amended Complaint, Count Two ¶¶ 2 & 3. Moreover, Army Aviation argues

that "Gilland-Wyant, Umphrey and Wyant negligently or fraudulently presented" Army Aviation

with a fake title for the 1933 Ford. Id. ¶ 4; see also ¶ 6 ("negligently, wantonly or intentionally

presented").

In Count Three, Army Aviation alleges that Gilland-Wyant "negligently, wantonly or

intentionally" failed to file the title application with the State of Alabama for a 1995 Isuzu

Trooper, VIN No. LACOJ58V357901139, that Umphrey bought. Amended Complaint, Count

Three ¶¶ 1 & 2. Again, Army Aviation was to hold a perfected first lien on the vehicle. Further,

Army Aviation alleges that Wyant, Gilland, Umphrey, Wilkes and Sutton "negligently or

---

addresses this claim separately in a later portion of this opinion.

7

intentionally and fraudulently allowed" another person to buy the car. Id. ¶ 3. Finally, Army

Aviation argues that these transactions constituted a fraudulent scheme by Wyant and Umphrey.

Id. ¶6.

In Count Four, Army Aviation alleges that as part of the fraudulent scheme discussed in

Count Three, Wyant, Umphrey, Gilland, Sutton, Wilkes, and Gilland-Wyant negligently sold a

1995 Isuzu Rodeo, VIN 4SCK58V654360247, without properly giving Army Aviation the

perfected first lien on the vehicle. See Amended Complaint, Count Four ¶¶ 1, 4 & 6.

In Count Five of the underlying state court action, Army Aviation argues that Gilland-

Wyant, through Gilland, Wyant, Umphrey, Wilkes and Sutton, negligently or intentionally and

fraudulently made false representations to Army Aviation in order to induce Army Aviation to

fund the purchase of a 1995 Isuzu Trooper, VIN No. JACOJ58VX579171715. See Amended

Complaint, Count Five ¶¶1 & 2. Further, Gilland-Wyant, according to Army Aviation, did not

send the title application for this vehicle to the State of Alabama. See id. ¶ 3. Consequently,

Army Aviation did not hold the first protected lien on the vehicle.

Army Aviation alleges, in Count Six, that Gregory Sutton ("Sutton") obtained a loan

from Army Aviation to purchase a 1955 Chevrolet BelAir, VIN No. 12456775. See Amended

Complaint, Count Six ¶1. Army Aviation argues Sutton negligently or knowingly made false

representations to Army Aviation about the vehicle; specifically, no such vehicle existed. See id.

¶4. According to Army Aviation, Gilland-Wyant actually owned the vehicle that Sutton was

purchasing and that Wyant and Gilland-Wyant altered the serial numbers on the title documents

for the vehicle as part of a scheme. See id. ¶6. Army Aviation argues that Sutton has defaulted

on his loan and Army Aviation has been injured. See id. ¶ 8.

8

MAR-20-2000  11:36      USDC MIDDLE ALABAMA

In Count Seven, Army Aviation alleges that Gilland-Wyant through Wyant "negligently or fraudulently" induced Army Aviation to provide a loan to Paul S. Newman for the purchase of a 1932 Ford Three Window Coupe, VIN No. 1823393133. See Amended Complaint, Count Seven ¶ 2. Army Aviation argues that in fact the car was not sold to Newman, but sold to another person. See id. ¶ 3. Army Aviation alleges that Gilland-Wyant, Gilland and Umphrey were negligent in their supervision of Wyant during this transaction. See id. ¶ 4.

With these allegations in mind, the court will review the insurance policy at issue. The policy contained the following provisions:

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**
   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:
      (1)    The amount we will pay for damages is limited as describe in LIMITS OF INSURANCE (SECTION III); AND
      (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payments of judgment or settlements under Coverages A or B or medical expenses under Coverage C.
   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b.    This insurance applies to "bodily injury" or "property damage" only if:

9

        (1)     The "bodily injury" or "property damage" is
caused by an "occurrence" that takes place
in the "coverage territory"; and

        (2)     The "bodily injury" or "property damage"
occurs during the policy period.

    c.     Damages because of "bodily injury" include
damages claimed by any person or organization for
care, loss of service

**2. Exclusions**
This insurance does not apply to:

        d.     "Bodily injury" or "property damage" expected or
intended from the standpoint of the insured.  This
exclusion does not apply to "bodily injury"
resulting from the use of reasonable force to protect
persons or property.

Pl. Exh. 5, Commercial General Liability Coverage.  Because of these provisions the Defendants

argue that Auto-Owners has an obligation to defend the Gilland-Wyant Defendants and

indemnify them.[5]  Auto-Owners, however, makes several arguments why these provisions do not

apply to the underlying state court action.  The court will address each argument in turn.

### 1. Fraud Exception

Auto-Owners' policy with Gilland-Wyant and JEG had an express provision excluding

fraud claims from coverage.  The exclusion states:

**This endorsement changes the policy.  Please read it carefully.**
**ABSOLUTE EXCLUSION FOR FRAUD,**
**MISREPRESENTATION, DECEIT OR**
**SUPPRESSION OR CONCEALMENT OF FACT**
This policy does not apply to any claim arising out of fraud, misrepresentation,
deceit, suppression or concealment of fact, whether intentional, unintentional,
innocent, negligent, willful, malicious, reckless or wanton, including, but not

---

[5]The court will use the term "Defendants" to refer to Gilland-Wyant, Gilland, Wyant,
Umphrey, Sutton, Wilkes and Army Aviation.  The court will use the term "Gilland-Wyant
Defendants" to refer to those defendants that Auto-Owners may cover by its policy in question,
namely, Gilland-Wyant, Gilland, Wyant, Umphrey, Sutton and Wilkes.

limited to an action or lawsuit demanding or seeking damages or recovery based
on direct liability, vicarious liability or agency principles.

Pl. Exh. 5, Fraud Endorsement (59218 (1-91)). Thus, under this exclusion from the policy,

Auto-Owners does not have to defend any claims made by Army Aviation arising out of fraud or

misrepresentations made by the Gilland-Wyant Defendants. This exception, however, makes no

reference to any negligence claims, other than negligent fraud, misrepresentation, deceit,

suppression or concealment.

Relying on the fraud exception in the policy, Auto-Owners claims that it is not obliged to

defend any count in the Amended Complaint in the underlying state court action against any of

the Gilland-Wyant Defendants because the claims all sound in fraud. See Pl. Br. at 14-15. Auto-

Owners alleges that the underlying theory of each of the counts in the state court action is fraud.

Therefore, according to Auto-Owners, the claims fall outside the coverage area.

The four Defendants who responded to Auto-Owner's motion for summary judgment

each argue that the fraud exclusion does not excuse Auto-Owners from having to defend the

underlying state court action. First, Wilkes argues that Count One and Count Four of the

Amended Complaint in the underlying state court action allege Wilkes acted negligently. See

Wilkes Br. at 2.[6] Therefore, Wilkes alleges that the fraud exclusion does not apply to these

counts. See id. at 5. Wilkes also argues that Count Five of the Amended Complaint alleges that

Wilkes "falsely represented" that the title of the vehicle had been sent to the State of Alabama.

See id. at 3. Wilkes states that "reckless conduct is not necessarily premised on intentional acts."

See id. at 6 (citing Edwards Dodge v. Plymouth Nat'l. Mutual Cas. Ins. Co., 510 So.2d 225 (Ala.

---

[6]This Brief does not contain page numbers, but for citation purposes, the court will
assume that the pages had been numbered consecutively.

11

1987)).  Thus, according to Wilkes, the fraud exception does not exclude coverage of this claim.
Id.

Army Aviation argues that it has alleged breach of duty claims, or fraud claims, and negligence claims for Gilland-Wyant's failure to file titles for the vehicles in question with the State of Alabama.  See A.A. Br. at 3.  According to Army Aviation, the subjective reason for the Gilland-Wyant Defendants' failure to file the titles is unknown because no depositions have been taken in the underlying state court action.  See id.  Further, Army Aviation alleges that the outcome of the underlying state court action will unlikely "ultimately depend upon any statement of fact by the Gilland-Wyant defendants."  Id.  Consequently, Army Aviation argues that the fraud exception does not exempt Auto-Owners from having to defend the Gilland-Wyant Defendants because the state court suit also sounds in negligence.  See id.

Gilland argues that the court can only look at the Amended Complaint to determine the true nature of the claims, because there is no underlying evidence submitted to the court with respect to Army-Aviation's claims.  See G. Br. at 8.  Gilland alleges that the Amended Complaint contains claims of negligence with respect to his actions.  See id. at 6-8 & 11 (noting that Count One, Two, Three, Four, Six and Seven allege that Gilland negligently failed to supervise and control other employees).  Consequently, according to Gilland, Auto-Owners is obliged to defend him in accordance with the provisions of the insurance policy as the fraud exception does not apply to the negligence claims.  See id. at 8.

Finally, Wyant argues that the face of the Amended Complaint alleges both intentional and unintentional acts.  See Wyant Br. at 5 (citing Tapscott v. Allstate Ins. Co., 526 So. 2d 570 (Ala. 1988) (noting that "if a complaint alleges both intentional and unintentional acts, then the insurer would probably be required to defend and indemnify on claims for unintentional acts.")).

12

Therefore, Wyant argues Auto-Owners must defend him on "both the unintentional as well as the alleged intentional acts and would be required to indemnify on all claims for unintentional acts." See id. at 5-6.[7]

Clearly, the policy excludes fraud claims from coverage. Therefore, the court finds that Auto-Owners owes no duty to defend any of the claims in the underlying state court action based on fraud. Accordingly, summary judgment is due to be granted with respect to the fraud claims. After reviewing the alleged claims of Army Aviation in its Amended Complaint, however, the court has determined that the claims against some of the Gilland-Wyant Defendants are most likely based in negligence and not fraud; specifically the allegations of negligent supervision. Thus, the real question before the court is whether Auto-Owners owes a duty to defend the negligence claims in the underlying suit.

### 2. Occurrence

In addressing the negligence claims, the court turns to the definition of "occurrence" used in the policy. According to the policy, any "bodily injury" or "property damage" must be caused by an "occurrence" in order for it to be covered by the policy. See Pl. Exh. 5, A(1)(b)(1). An "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Pl. Exh. 5.

In Auto-Owners Insurance Company v. Toole, 947 F. Supp. 1557 (M.D. Ala. 1996), Judge Thompson analyzed the definition of an "occurrence." See Toole, 947 F. Supp. at 1563.

---

[7]Wyant also cites the court to several cases that state once a complaint against an insured states one claim within the policy's coverage, the insurer has to defend the entire lawsuit. See Wyant Br. at 5 (citing Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531 (C.A. Neb. 1979); Tampa Elec. Co. v. Stone & Webster Engineering Corp., 367 F. Supp. 27 (D.C. Fla. 1973)). These cases, however, are not binding authority on this court. Alabama has not recognized such a broad reading of an insurer's duty to defend.

13

In Toole, Auto-Owners had issued to a car salesman the same commercial liability and garage

liability policies as are at issue here. The car salesman was subsequently sued by purchasers of

some of his cars alleging that the financing arrangement he had used on the cars was fraudulent

and that he had breached the sales contract. Judge Thompson found that two counts in the

underlying action relating to the sale and financing of the cars arose "out of a business dispute,

albeit in the context of a consumer contractual transaction." Id. at 1564. Quoting Toombs NJ

Inc. v. Aetna Casualty & Sur. Co., 591 A.2d 304, 306 (Pa. Super. 1991), Judge Thompson held:

> To allow indemnification under the facts presented here would have the effect of
> making the insurer a sort of silent business partner subject to great risk in the
> economic venture without any prospects of sharing in the economic benefit. The
> expansion of the scope of the insurer's liability would be enormous without
> corresponding compensation. There is simply no reason to expect that such a
> liability would be covered under a comprehensive liability policy which has, as its
> genesis, the purpose of protecting an individual or entity from liability for
> essentially accidental injury to another individual, or property damage to
> another's possessions, even if, perhaps the coverage of the policy has been
> expanded to cover other non-bodily injuries that sound in tort.

Id. Consequently, Judge Thompson found that Auto-Owners did not owe a duty to defend these

claims.

Relying on the Toole case, Auto-Owners argues that the acts complained of in the

underlying state court action do not constitute an "occurrence" as defined by the policy. See Pl.

Br. at 20. Auto-Owners alleges that to allow such intentional actions to be considered an

occurrence would "have the effect of making the insurer a sort of silent business partner subject

to great risk in the economic venture without any prospects of sharing in the economic benefit."

See Pl. Br. at 21-22 (quoting Toole, 947 F. Supp. at 1564 (citation omitted)). Therefore, Auto-

Owners argues that the underlying state court claims are not an "occurrence," and fall outside the

scope of the insurance coverage.

14

The facts of <u>Toole</u> are somewhat different from the present case. For example, one of the counts that was held not to fall within the definition of an occurrence was for unconscionable acts by the defendants. <u>See id.</u> at 1562. The second claim was for a breach of contract. <u>See id.</u> Despite the factual differences, however, the underlying theory of <u>Toole</u>, that such claims should not be covered under a general liability insurance contract, analogously applies to the claims in the present case.

Just as in <u>Toole</u>, the claims in Army Aviation's underlying suit arise from a business dispute. Although not specifically referred to as a contract dispute, Army Aviation argues that Gilland-Wyant breached a duty to file the title papers for several vehicles that Army Aviation financed. So, to require Auto-Owners to defend the Gilland-Wyant Defendants in the underlying state court action would make Auto-Owners a silent business partner without any possibility of reward. Making Auto-Owners liable would essentially "distort the purpose of the liability insurance [policy] in this case . . . ." <u>Toole</u>, 947 F. Supp. at 1564. General liability insurance covers accidental injury or property damage, not business disputes, whether intentionally or negligently caused. Consequently, the court finds that the claims alleged in the underlying state court action in counts one through seven do not fall within the policy definition of an "occurrence." Accordingly, the claims fall outside the scope of coverage and Auto-Owners' motion for summary judgment is due to be granted on Counts One through Seven.

The court will not address the other arguments made by Auto-Owners and the Defendants concerning whether the claims were within the policy period or were covered by the policy, as the court has determined that the allegations of the underlying state court action do not fall within the definition of "occurrence."

### 3. *Count Eight*

Finally, because Count Eight only alleges a claim against Wyant, Auto-Owners addresses it separately. Auto-Owners argues that the last effective date of the insurance policy in question was April 26, 1996. See Pl. Br. at 22. In Count Eight, Army Aviation alleges a fraud or conversion after June 5, 1996. See id. at 23. Thus, according to Auto-Owners, under Alabama law, because even if there were an "occurrence," it would not have been until after the end of the policy term, Count Eight does not fall with in the policy coverage. See id. 22-23 (citing State Farm Fire and Cas. Co. v. Gwin, 658 So.2d 426, 428 (Ala. 1995)).

Under Alabama law, "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged." See Gwin, 658 So.2d at 428 (citations omitted). In Count Eight of the Amended Complaint in the underlying suit, Army Aviation alleges that Wyant induced Army Aviation to refinance $61,000 worth of debt by giving Army Aviation perfected first security liens on a 1937 Chevrolet, VIN No. 261936, and a 1992 Cadillac Seville. See Amended Complaint, Count Eight ¶1. Then, according to Army Aviation, Wyant defaulted on the loan and refused to surrender the vehicles to Army Aviation. See id. ¶ 5. Army Aviation alleges that Wyant has unlawfully and fraudulently sold the 1937 Chevrolet and has disposed of, unlawfully and fraudulently, the 1992 Cadillac. See id. ¶¶ 6 & 7. Consequently, Army Aviation alleges that Wyant has "fraudulently and willfully and maliciously converted the two vehicles to his own use . . . ." Id. ¶ 8. All of these allegations relate to facts that occurred after June 5, 1996. See id. ¶1.

As was held in regard to the other Counts, this Count does not allege an "occurrence" which would trigger coverage. Even if it did, however, because these events occurred after June 5, 1996, any "occurrence" that caused damage could not have occurred, with respect to this

16

claim, until after June 5, 1996. See id. ¶8. The insurance policy only covered the Gilland-Wyant

Defendants until April 26, 1996. Consequently, for this additional reason, this claim is not

covered by the insurance policy and Auto-Owners owes no duty to defend Wyant against this

claim in the underlying state court action. Accordingly, summary judgment is due to be granted

on this claim.

## C. Duty to Indemnify

Since there is no coverage under the policy for the claims asserted in the underlying state

court action, there would be no duty to indemnify the Gilland-Wyant Defendants for any

judgment against them on those claims. Accordingly, Auto-Owners is entitled to summary

judgment and a declaration to that effect.

## D. Motion to Strike

Auto-Owners has filed a Motion to Strike the affidavits of Wyant and Gilland that were

submitted with their briefs in opposition to summary judgment. See Pl. Supp. Reply Br. at 2.

According to Auto-Owners, these affidavits include impermissible hearsay and inadmissible

parol evidence. See id. Further, Auto-Owners argues that these affidavits "contain improper,

irrelevant and self-serving opinion testimony." Id. Although the court notes these affidavits are

evidence of Wyant's and Gilland's actions concerning the titles of the vehicles, they did not

affect the court's ultimate decision on whether Auto-Owners owed a duty to defend. Therefore,

Auto Owners' Motion to Strike is due to be denied as moot.

### V. CONCLUSION

17

MAR-20-2000  11:39      USDC MIDDLE ALABAMA                                          P.22/22

For the foregoing reasons, Auto-Owners' Motion for Summary Judgment is due to be

GRANTED.  Auto-Owners' Motion to Strike Affidavits is due to be DENIED as MOOT.

Finally, Auto-Owners' Motion for Judgment by Default Against Certain Defendants is due to be

GRANTED.  A separate Order will be entered in accordance with this Memorandum Opinion.

Done this 20th day of March, 2000.

W. HAROLD ALBRITTON
CHIEF UNITED STATES DISTRICT JUDGE

18

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JAN 0 3 2001

THOMAS K. KAHN
CLERK
```

No. 00-12055
Non-Argument Calendar

D.C. Docket No. 99-00403-CV-A-S

AUTO-OWNERS INSURANCE COMPANY,
a mutual insurance company
incorporated in the State of Michigan,

Plaintiff-Appellee,

versus

GILLAND-WYANT IMPORTS, INC.,
an Alabama Corporation,
JOHN GILLAND,
QUINTON G. UMPHREY,
GREGORY SUTTON,
BILL WIKES, et al.,

Defendants,

ARMY AVIATION CENTER FEDERAL
CREDIT UNION, a federally
chartered credit union,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

(January 3, 2001)

Before EDMONDSON, COX and HULL, Circuit Judges.

PER CURIAM:

Army Aviation Center Federal Credit Union appeals the district court's summary judgment against it on Auto-Owners Insurance Company's claim for declaratory judgment that it is not liable for damages that Army Aviation seeks in an underlying state-court suit.

The liability policy that Auto-Owners issued to Gilland-Wyant, the defendant in the underlying suit, provides in pertinent part that Auto-Owners must pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (R.1-27-Ex. 1 at 1.) "Property damage" means, in relevant part, "[l]oss of use of tangible property that is not physically injured." *Id.* at 10. Army Aviation's state-court suit alleges that Gilland-Wyant, a car dealership, falsified or failed to file certain paperwork, thus causing Army Aviation to lose liens on a number of different vehicles, with the result that Army Aviation was out of pocket trying to perfect the liens and recover, not always successfully, on the related defaulted notes. The complaint's ad damnum clauses seek damages measured by the costs of perfecting the liens, recovering on the notes, and losses on the defaulted notes.

Army Aviation argues that the damages it seeks qualify as "property damage." We disagree because of the plain language of the definition, which includes only damages for "loss of use." Army Aviation does not seek *any* damages from loss of use

2

(like rent for replacement vehicles), but rather from loss of the economic value of its security interest. When policy language is plain, it controls. *See State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 314 (Ala. 1999). Because the policy thus does not cover the damages, we need not address any of the other arguments raised, and the judgment is

AFFIRMED.

Westlaw.

247 F.3d 248 (Table)                                                                      Page 1
247 F.3d 248 (Table)
**(Cite as: 247 F.3d 248 (Table))**

Auto-Owners v. Gilland-Wyant
C.A.11 2001.
(The decision of the Court is referenced in a "Table
of Decisions Without Reported Opinions" appearing
in the Federal Reporter. The Eleventh Circuit
provides by rule that unpublished opinions are not
considered binding precedent.  They may be cited as
persuasive authority, provided that a copy of the
unpublished opinion is attached to or incorporated
within the brief, petition or motion.  Eleventh Circuit
Rules, Rule 36-2, 28 U.S.C.A.)
     United States Court of Appeals, Eleventh Circuit.
                       Auto-Owners
                            v.
                    Gilland-Wyant[FN*]
                    **NO. 00-12055**

                    January 03, 2001

Appeal From:  M.D.Ala., No.99-00403-CV-A-S


Affirmed.


          FN* Fed.R.App.P. 34(a); 11th Cir.R. 34-3.

C.A.11 2001.
Auto-Owners v. Gilland-Wyant
247 F.3d 248 (Table)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.