# EXHIBIT "1"

```
                                                    JUDGE: JOHN V. DENSON II
----------------------------------------------------------------------------
                    ALABAMA JUDICIAL DATA CENTER
                       CASE ACTION SUMMARY
                          CIRCUIT CIVIL
----------------------------------------------------------------------------
  IN THE CIRCUIT  COURT OF    LEE        COUNTY

   STINNETT GROUP, LLC DBA STINNETT HEATING & COOLING  VS  HUFF & ASSOCIA
 FILED:  12/06/2004 TYPE: CONTRACT/EJMNT/SEIZU TYPE TRIAL: NON-JURY   TRACK:

****************************************************************************
 DATE1:             CA:                 CA DATE:
 DATE2:  02/12/2007  AMT:    $211,963.49  PAYMENT:
 DATE3:  08/13/2007
****************************************************************************
  02/22/2006   SET FOR: STATUS/SCHED CONFERE ON 03/22/2006 AT 090

  03/15/2006   NOTICE OF APPEARANCE

  03/17/2006   LISTED AS ATTORNEY FOR C001: SAWYER JOSEPH E JR

  03/22/2006   SET FOR: STATUS/SCHED CONFERE ON 05/26/2006 AT 090

  05/18/2006   MOTION COVER SHEET

  05/18/2006   MOTION 2 CONTINUE

  05/23/2006   SET FOR: STATUS/SCHED CONFERE ON 08/22/2006 AT 090

  09/01/2006   SET FOR: PRETRIAL CONFERENCE  ON 02/12/2007 AT 090

  09/01/2006   SET FOR: TRIAL - BENCH ON 04/02/2007 AT 0830A

  11/29/2006   ANSWER 2 AMENDED COMPLAINT

  11/29/2006   ANSWER OF UNKNOWN ON 11/29/2006 FOR D002    (AV02)

  12/01/2006   EFILED-MOTION 4 PARTIAL SUMMARY JUDGMENT

  12/01/2006   EFILED-MEMO OF LAW IN SUPPORT OF ITS MOTION 4

  12/01/2006     PARTIAL SUMMARY JUDGMENT

  12/13/2006   ORDER

  12/13/2006   TRANSMITTAL NOTICE      SENT TO PLAINTIFF ATTORNEY

  01/22/2007   ORDER GRANTING MOTION 4 PARTIAL SUMMARY JUDGMENT

  01/22/2007     AS 2 COUNT II OF THE AMENDED COMPLAINT

  02/05/2007   MOTION COVER SHEET

  02/05/2007   MOTION 2 CONTINUE

  02/09/2007   SET FOR: TRIAL - BENCH ON 08/13/2007 AT 0900A

  02/09/2007   TRANSMITTAL NOTICE      SENT TO PLAINTIFF ATTORNEY
----------------------------------------------------------------------------
-------|------------------------------------------------------------------
-------|------------------------------------------------------------------
-------|------------------------------------------------------------------
-------|------------------------------------------------------------------
-------|------------------------------------------------------------------
GEG   05/01/2007
```

STATE OF ALABAMA,
LEE COUNTY
      I, CORINNE T. HURST do hereby certify that this is a
true and correct copy of the original on file in this office.
      Witness my hand and seal of Court this ___ day
of _____ ___
                  CORINNE T. HURST, Circuit Clerk

CV 2004 000797.00

JUDGE: JOHN V. DENSON II

---

ALABAMA JUDICIAL DATA CENTER
CASE ACTION SUMMARY
CIRCUIT CIVIL

---

IN THE CIRCUIT COURT OF    LEE        COUNTY

STINNETT GROUP, LLC DBA STINNETT HEATING & COOLING   VS   HUFF & ASSOCIA
FILED:   12/06/2004 TYPE: CONTRACT/EJMNT/SEIZU TYPE TRIAL: NON-JURY   TRACK:

***********************************************************************
DATE1:          CA:              CA DATE:
DATE2:   02/12/2007  AMT:    $211,963.49  PAYMENT:
DATE3:   08/13/2007
***********************************************************************

| Date | Entry |
|------|-------|
| 01/20/2005 | HUFF & ASSOCIATES CONSTRUCTION CO INC'S ANSWER |
| 01/20/2005 | & COUNTERCLAIM |
| 01/25/2005 | ANSWER 2 COUNTERCLAIM |
| 04/22/2005 | INTERROGATORIES 2 DEF |
| 04/22/2005 | DISCOVERY CERTIFICATE |
| 05/06/2005 | DISCOVERY CERTIFICATE |
| 05/06/2005 | NOTICE OF DEPOSITION/JOHN HUFF, JR |
| 05/24/2005 | AMENDED COUNTERCLAIM |
| 05/24/2005 | DEF'S HUFF & ASSOC CONSTR CO, INC ANSWER 2 PLF'S |
| 05/24/2005 | 1ST SET OF INTERROGATORIES |
| 05/25/2005 | ANSWER 2 AMENDED COUNTERCLAIM |
| 07/12/2005 | MOTION COVER SHEET |
| 07/12/2005 | MOTION 2 AMEND ORIGINAL COMPLAINT & ADD ADDITIONAL |
| 07/12/2005 | DEF |
| 09/21/2005 | ORDER GRANTING MOTION 2 AMEND THE ORIGINAL COMPLNT |
| 10/03/2005 | AMENDED COMPLAINT |
| 10/03/2005 | TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA ADD |
| 10/03/2005 | S & C FILED AND SENT BY CERTIFIED MAIL FOR SERVICE |
| 10/03/2005 | CERTIFIED MAI ISSUED: 10/03/2005 TO D002    (AV02) |
| 10/05/2005 | D002 SERVED CERTIFIED MAIL ON 10/04/2005 |
| 11/14/2005 | NOTICE OF APPEARANCE OF COUNSEL |
| 11/15/2005 | LISTED AS ATTORNEY FOR D002: HUGHES CHRISTOPHER J |
| 11/28/2005 | ANSWER 2 AMENDED COMPLAINT |
| 02/17/2006 | MOTION 2 W/DRAW-HON S HOLLIDAY-NO COVER SHEET |
| 02/22/2006 | ORDER GRANTING MOTION 2 W/DRAW FILED BY PLF'S ATTY |
| 02/22/2006 | A STATUS/SCHEDULING CONFERENCE IS SET 4 MARCH 22 |
| 02/22/2006 | 2006 AT 9:00 AM |

---

2

```
                                          JUDGE: JOHN V. DENSON II
------------------------------------------------------------------------
                    ALABAMA JUDICIAL DATA CENTER
                       CASE ACTION SUMMARY
                         CIRCUIT CIVIL
------------------------------------------------------------------------
  IN THE CIRCUIT  COURT OF    LEE        COUNTY

   STINNETT GROUP, LLC DBA STINNETT HEATING & COOLING  VS  HUFF & ASSOCIA
 FILED:  12/06/2004 TYPE: CONTRACT/EJMNT/SEIZU TYPE TRIAL: NON-JURY   TRACK:

************************************************************************
 DATE1:            CA:                  CA DATE:
 DATE2:  02/12/2007 AMT:    $211,963.49 PAYMENT:
 DATE3:  08/13/2007
************************************************************************
 PLAINTIFF  001: STINNETT GROUP, LLC
                 ATTN: DALE STINNETT      ATTORNEY: SAWYER JOSEPH E JR
                 301 EAST GRUBBS AVE      SAW004    203 SOUTH EDWARDS
                 ENTERPRISE, AL  36330-2612
                 PHONE: (334)000-0000               ENTERPRISE, AL   36330
 ENTERED:  12/06/2004 ISSUED:           TYPE:                (205)347-6447
 SERVED:           ANSWERED:            JUDGEMENT:
------------------------------------------------------------------------
 DEFENDANT  001: HUFF & ASSOCIATES CONSTRUCTION CO, INC
                 ATTN: JOHN T HUFF, JR    ATTORNEY: TICKAL JEFFREY GERALD
                 1220 FOX RUN PARKWAY     TIC001    P O BOX 711
                 OPELIKA, AL  36803-0000
                 PHONE: (334)000-0000               OPELIKA, AL   36803
 ENTERED:  12/06/2004 ISSUED:  12/06/2004 TYPE:    SHERIFF   (334)737-3733
 SERVED:  12/14/2004 ANSWERED:           JUDGEMENT:
------------------------------------------------------------------------
 DEFENDANT  002: TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA
                 C/O CSC LAWYERS, INC     ATTORNEY: HUGHES CHRISTOPHER J
                 150 SOUTH PERRY STREET   HUG031    PO BOX 2345
                 MONTGOMERY, AL  36104-0000
                 PHONE: (334)000-0000               OPELIKA, AL   36803
 ENTERED:  10/03/2005 ISSUED:  10/03/2005 TYPE:    CERTIFIED  (334)745-3504
 SERVED:  10/04/2005 ANSWERED: 11/29/2006 JUDGEMENT:
------------------------------------------------------------------------
 ------------------------------------------------------------------
    12/06/2004   ASSIGNED TO JUDGE: HON. JACOB A. WALKER III (AV01)

    12/06/2004   CASE ASSIGNED STATUS OF: ACTIVE           (AV01)

    12/06/2004   ORIGIN: INITIAL FILING                    (AV01)

    12/06/2004   BENCH/NON-JURY TRIAL REQUESTED            (AV01)

    12/06/2004   STINNETT GROUP, LLC ADDED AS C001         (AV02)

    12/06/2004   LISTED AS ATTORNEY FOR C001: HOLLIDAY SANDY S

    12/06/2004   HUFF & ASSOCIATES CONSTRUCTION CO, INC ADDED AS D0

    12/06/2004   S & C FILED AND SENT TO LCSO FOR SERVICE  (AV02)

    12/06/2004   SHERIFF ISSUED: 12/06/2004 TO D001        (AV02)

    12/16/2004   D001 SERVED SHERIFF       ON 12/14/2004

    01/11/2005   NOTICE OF APPEARANCE

    01/11/2005   ORDER TRANSFERRING CASE 2 HON JUDGE DENSON

    01/11/2005   ASSIGNED TO JUDGE: JOHN V. DENSON II       (AV01)

    01/12/2005   LISTED AS ATTORNEY FOR D001: TICKAL JEFFREY GERAL
------------------------------------------------------------------------
GEG    05/01/2007                              CV 2004 000797.00
```

3

**IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA**

F I L E D

DEC 0 3 2004

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

**Stinnett Group, LLC, dba Stinnett Heating and Cooling,**

　　　　　Plaintiff,

vs.

**Huff and Associates Construction Co., Inc.,**

　　　　　Defendant.

Case Action: CV-2004-29 

## COMPLAINT

1.　Plaintiff is an Alabama limited liability company, whose principal office is at 301 East Grubbs Avenue, Enterprise, Alabama, 36330-2612.

2.　Defendant is an Alabama business corporation, whose principal office is at 1220 Fox Run Parkway, Opelika, Alabama, 36803.

## COUNT ONE

3.　On or about June 18, 2003, the Plaintiff and the Defendant entered into a Subcontract, wherein the Plaintiff provided to the Defendant certain heating, air conditioning and ventilating services and construction.

4.　Defendant owes Plaintiff the sum of $159,209.60 for work, labor and materials provided for the Defendant by the Plaintiff pursuant to the Subcontract dated June 18, 2003, at the Defendant's request.

Wherefore Plaintiff demands judgment against the Defendant in the sum of $159,209.60 for interests and costs.

4

SCANNED

## COUNT TWO

5.   On or about November 18, 2003, the Plaintiff and the Defendant entered into a Subcontract, wherein the Plaintiff provided to the Defendant certain heating, air conditioning and ventilating services and construction.

6.   Defendant owes Plaintiff the sum of $52,753.89 for work, labor and materials provided for the Defendant by the Plaintiff pursuant to the Subcontract dated November 18, 2003, at the Defendant's request.

Wherefore Plaintiff demands judgment against the Defendant in the sum of $52,753.89 for interests and costs.

Stinnett Group, LLC

By: _K. Dal S_____

It's _managing member_

STATE OF ALABAMA    )
                    :
RANDOLPH COUNTY     )

I, the undersigned authority, a Notary Public in and for said State and County, do hereby certify that _Dale Stinnett_____, whose name is signed to the foregoing document, and who is known to me, acknowledged before me this day that, being informed of the contents of the document, he/she has executed the same voluntarily on the day the same bears date.

Given under my hand and seal this _19_ day of _November_. 2004.

_Elizabeth M Smith_____
NOTARY PUBLIC
My Commission Expires:_____

ELIZABETH M. SMITH
Notary Public, State of Alabama
Alabama State At Large
My Commission Expires
August 20, 2008

5

S. SANFORD HOLLIDAY
Attorney for Plaintiff
4521 U.S. Highway 431
Post Office Box 727
Roanoke, Alabama 36274
Telephone: (334) 863-2717
SJIS: HOL O31

Plaintiff requests service on the Defendant by the Sheriff of Lee County, Alabama, at:

Huff and Associates Construction Co., Inc.
Attn: John T. Huff, Jr.
1220 Fox Run Parkway
Opelika, AL 36803

S. SANFORD HOLLIDAY
Attorney for Plaintiff

)                                    )

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

F I L E D

STINNETT GROUP, LLC,              )
d/b/a STINNETT HEATING            )                    JAN 2 0 2005
AND COOLING,                      )
                                  )                    IN OFFICE
    PLAINTIFF,                    )                CORINNE T. HURST
                                  )                   CIRCUIT CLERK
                                  )
V.                                )        CASE NO.: CV-04-797
                                  )
HUFF & ASSOCIATES                 )
CONSTRUCTION CO., INC.,           )
                                  )
    DEFENDANT.                    )

## ANSWER

COMES NOW the Defendant, Huff & Associates Construction Co., Inc., ("Huff"), and files this, their Answer to Plaintiff's ("Stinnett") Complaint.

1. Huff admits the Plaintiff is an Alabama Limited Liability Company.

2. Huff admits the allegations set forth in Paragraph #2 of the Plaintiff's Complaint.

3. Huff admits the allegations set forth in Paragraph #3 of the Plaintiff's Complaint.

4. Huff denies the allegations set forth in Paragraph #4 of the Plaintiff's Complaint and demands strict proof thereof.

5. Huff admits the allegations set forth in Paragraph #5 of the Plaintiff's Complaint.

6. Huff denies the allegations set forth in Paragraph #6 of the Plaintiff's Complaint and demands strict proof thereof.

## AFFIRMATIVE DEFENSES

1. The Plaintiff's claim fails to state a claim upon which relief can be granted.

2. The Plaintiff has failed to satisfy one or more conditions precedent to its contract to bring this action, and therefore Plaintiff has waived its Complaint against the Defendant.

3. The Plaintiff's claim is barred in whole or in part by its failure to deliver goods in a timely manner and by delivering defective material. As a result of Stinnett's failure to timely and properly perform its contract additional costs may and have been incurred by Huff as a result of Stinnett's untimely performance pending final inspection acceptance by the owner.

4. If it is determined that Stinnett is owed any amount pursuant to its contract with Huff, that

amount should be reduced by the damages incurred by Huff as a result of Stinnett's untimely delivery of equipment, or delivery of defective equipment and/or negligent work.

    5. Huff pleads the affirmative defense of waiver.

    6. Huff pleads the affirmative defense of release.

    7. Huff pleads the affirmative defense of credit and set-off.

## COUNTER CLAIM

COMES NOW Huff & Associates and asserts this Counter-Claim against Stinnett and states as follows:

    1. Stinnett is subject to the jurisdiction of this Court.

    2. Pursuant to the terms of the subcontract between Huff & Stinnett, Stinnett is liable to Huff for all damages incurred as a result of Stinnett's failure to complete its work or any portion thereof in accordance with the schedule of work, including but not limited to, liquidated damages, delay damages or other costs or damages imposed upon Huff by the owner.

    3. The subcontract requires Stinnett to indemnify, hold harmless and defend Huff and all of their agents or employees for any claims, damages, losses and expenses, including attorney's fees, arising out of or resulting from Stinnett's performance of its work under the subcontract.

    4. At this time, Stinnett has failed to properly perform under the terms of its contract and is in breach thereof.

    5. As a result of Stinnett's failure to perform under the terms of the contract, Huff has been damaged in an amount to be determined by the trier of fact and upon conclusion of the project.

    6. Huff is entitled to additional charges to the extent Huff incurs additional damages as a result of Stinnett's failure to perform in accordance with the terms of the subcontract, including but not limited to delay damages, liquidated damages, or other costs or damages imposed upon Huff by the owner plus Huff's costs, expenses, attorney's fees in defending this action.

    7. Huff has been required to supplement Stinnett's forces on this job and incur extra damages as a result of Defendant's failure to properly perform under the contract.

    8. Stinnett has not completed its work under the subcontract. Huff is entitled to recover from Stinnett all costs associated with completing Stinnett's work.

WHEREFORE, Huff prays that a judgment be entered in its favor and against Stinnett as follows:

8

1.  Damages in the amount as shown by the evidence to have been incurred by Huff as a result of Stinnett's untimely performance and un-workmanlike performance in connection with the work under the subcontract;

plus any additional damages incurred by Huff, including but not limited to delay damages, liquidated damages or other costs and damages imposed upon Huff by the owner;

plus all costs incurred by Huff in completing Stinnett's work under the subcontract;

plus all costs, expenses and attorney's fees incurred by Huff in connection with this action; and such further and additional relief deemed just by this Court.

Respectfully submitted, this the _19th_ day of January, 2005.

JEFFREY G. TICKAL (TIC001)
Attorney for Huff & Associates
Gullage, Tickal, Lauderdale & Lauderdale, LLP
P.O. Box 230
Opelika, AL  36803-0230
(334) 749-5115

9

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the following parties by placing a copy of the same in the United States mail, postage prepaid, on this the 2⁷ᵗʰ day of January, 2005.

S, Sanford Holliday
Attorney at Law
P. O. Box 727
Roanoke, AL 36274

_JEFFREY G. TICKAL_ TICO01

Of Counsel:
GULLAGE, TICKAL, LAUDERDALE
& LAUDERDALE, LLP
Post Office Box 230
Opelika, AL 36803-0230

10



**IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA**

FILED
JAN 2 5 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Stinnett Group, LLC, dba Stinnett Heating
and Cooling,

        Plaintiff,

    vs.

Huff and Associates Construction Co., Inc.,

      Defendant.

**Case Action: CV-2004-797**

## ANSWER TO COUNTERCLAIM

Comes now the Plaintiff to respond to the Defendant's Counterclaim as follows:

I.      Plaintiff admits to the allegations contained in Paragraph 1.

II.     Plaintiff denies all other allegations and demands strict proof thereof.

III.     Defendant's claims fail to state a claim upon which relief can be granted.

IV.     Defendant failed to satisfy one or more conditions precedent to its contract to bring its counterclaim and therefore Defendant has waved its Counterclaim against the Plaintiff.

V.     Plaintiff pleads the affirmative defense of waiver.

VI.     Plaintiff pleads the affirmative defense of release.

Respectfully submitted,

11



**S. SANFORD HOLLIDAY**
Attorney for Plaintiff
4521 U.S. Highway 431
Post Office Box 727
Roanoke, Alabama 36274
Telephone: (334) 863-2717
SJIS: HOL O31

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on this the⟨9y ⟩day of **January**, 2005, mailed a copy of the foregoing to the following individual, by United States Mail, properly addressed, with first class postage prepaid:

    Jeffrey G. Tickal
    P.O Box 230
    Opelika, AL 36803-0230

**S. SANFORD HOLLIDAY**
Attorney for Plaintiff

12

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| STINNETT GROUP, LLC, d/b/a ) | |
| STINNETT HEATING and COOLING, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO.: CV-04-797** |
| ) | |
| HUFF and ASSOCIATES ) | |
| CONSTRUCTION COMPANY, INC. ) | |
| ) | |
| **Defendant/Counter Claimant,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| STINNETT GROUP, LLC, d/b/a ) | |
| STINNETT HEATING and COOLING, ) | |
| ) | |
| **Counterclaim Defendant.** ) | |

F I L E D

MAY 2 4 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### AMENDED COUNTERCLAIM

COMES NOW Huff & Associates Construction Company, Inc. ("Huff") pursuant to ARCP 15 and amends its Counterclaim as follows:

### COUNT ONE: HANDLEY HIGH SCHOOL SUBCONTRACT

1. Stinnett entered into a Subcontract with Huff to perform work on the Handley High School Project.

2. Pursuant to the terms of the subcontract between Huff & Stinnett, Stinnett is liable to Huff for all damages incurred as a result of Stinnett's failure to complete its work or any portion thereof in accordance with the schedule of work, including but not limited to, liquidated damages, delay damages or other costs or damages imposed upon Huff by the owner.

3. The subcontract requires Stinnett to indemnify, hold harmless and defend Huff and all of their agents or employees for any claims, damages, losses and expenses, including attorney's fees, arising out of or resulting from Stinnett's performance of its work under the subcontract.

13

4. At this time, Stinnett has failed to properly perform under the terms of its contract and is in breach thereof.

5. As a result of Stinnett's failure to perform under the terms of the contract, Huff has been damaged in an amount to be determined by the trier of fact and upon conclusion of the project.

6. Huff is entitled to additional charges to the extent Huff incurs additional damages as a result of Stinnett's failure to perform in accordance with the terms of the subcontract, including but not limited to delay damages, liquidated damages, or other costs or damages imposed upon Huff by the owner plus Huff's costs, expenses, attorney's fees in defending this action.

7. Huff has been required to supplement Stinnett's forces on this job and incur extra damages as a result of Defendant's failure to properly perform under the contract.

8. Stinnett has not completed its work under the subcontract. Huff is entitled to recover from Stinnett all costs associated with completing Stinnett's work.

WHEREFORE, Huff prays that a judgment be entered in its favor and against Stinnett as follows:

Damages in the amount as shown by the evidence to have been incurred by Huff as a result of Stinnett's untimely performance and un-workmanlike performance in connection with the work under the subcontract;

plus any additional damages incurred by Huff, including but not limited to delay damages, liquidated damages or other costs and damages imposed upon Huff by the owner;

plus all costs incurred by Huff in completing Stinnett's work under the subcontract;

plus all costs, expenses and attorney's fees incurred by Huff in connection with this action; and such further and additional relief deemed just by this Court.

## COUNT TWO: KA HOUSE

9. Stinnett entered into a Subcontract with Huff to perform work on the KA House Project.

14

10. Pursuant to the terms of the subcontract between Huff & Stinnett, Stinnett is liable to Huff for all damages incurred as a result of Stinnett's failure to complete its work or any portion thereof in accordance with the schedule of work, including but not limited to, liquidated damages, delay damages or other costs or damages imposed upon Huff by the owner.

11. The subcontract requires Stinnett to indemnify, hold harmless and defend Huff and all of their agents or employees for any claims, damages, losses and expenses, including attorney's fees, arising out of or resulting from Stinnett's performance of its work under the subcontract.

12. At this time, Stinnett has failed to properly perform under the terms of its contract and is in breach thereof.

13. As a result of Stinnett's failure to perform under the terms of the contract, Huff has been damaged in an amount to be determined by the trier of fact and upon conclusion of the project.

14. Huff is entitled to additional charges to the extent Huff incurs additional damages as a result of Stinnett's failure to perform in accordance with the terms of the subcontract, including but not limited to delay damages, liquidated damages, or other costs or damages imposed upon Huff by the owner plus Huff's costs, expenses, attorney's fees in defending this action.

15. Huff has been required to supplement Stinnett's forces on this job and incur extra damages as a result of Defendant's failure to properly perform under the contract.

16. Stinnett has not completed its work under the subcontract. Huff is entitled to recover from Stinnett all costs associated with completing Stinnett's work.

WHEREFORE, Huff prays that a judgment be entered in its favor and against Stinnett as follows:

Damages in the amount as shown by the evidence to have been incurred by Huff as a result of Stinnett's untimely performance and un-workmanlike performance in connection with the work under the subcontract;

plus any additional damages incurred by Huff, including but not limited to delay damages, liquidated damages or other costs and damages imposed upon Huff by the owner;

plus all costs incurred by Huff in completing Stinnett's work under the subcontract;

plus all costs, expenses and attorney's fees incurred by Huff in connection with this action; and such further and additional relief deemed just by this Court.

Respectfully submitted, this 23rd day of _May_, 2005

_____
JEFFREY G. TICKAL (TICOO1)
Attorney for Huff & Associates
Gullage, Tickal, Lauderdale and Lauderdale, LLP
PO Box 230
Opelika, AL 36801
334-749-5115

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing notice upon the following parties by placing a copy of the same in the United States mail, postage prepaid, on this the 23rd day of _May_, 2005.

S. Sanford Holliday
PO Box 727
Roanoke, Alabama   36274

_____
JEFFREY G. TICKAL

16

)                                    )

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STINNETT GROUP, LLC, d/b/a          *
STINNETT HEATING AND                *
COOLING,                            *
                                    *
    Plaintiff,   *
                                    *
vs.                                 *        CASE NUMBER: CV-04-797
                                    *
HUFF AND ASSOCIATES                 *
CONSTRUCTION CO., INC.,             *
                                    *
    Defendant.   *

### ORDER

This matter is before the Court on the Plaintiff's Motion to Amend the Original

Complaint and Add Additional Defendant filed on July 12, 2005. There has been no objection

by the present Defendant. The Motion to Amend the Original Complaint and Add Additional

Defendant, i.e. Travelers Casualty and Surety Company of America is hereby GRANTED.

    When the additional Defendant is served and files an appearance, the Court will set a

Scheduling Conference to determine deadlines and a date for trial.

    DONE this the  16th  day of  September , 2005.

                        _____
                        John V. Denson, II
                        Circuit Judge

cc:   S. Sanford Holliday
       Jeffery G. Tickal

```
F I L E D
  SEP 2 1 2005
   IN OFFICE
CORINNE T. HURST
 CIRCUIT CLERK
```

17

IN THE CIRCUIT COURT OF ~~RANDOLPH~~ LEE COUNTY, ALABAMA

**FILED**

OCT 0 3 2005

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

**Stinnett Group, LLC, dba Stinnett Heating and Cooling,**

      Plaintiff,

vs.

**Huff and Associates Construction Co., Inc., and Travelers Casualty and Surety Company of America**

      Defendant,

**CASE NO.: CV-2004-797**

## AMENDED COMPLAINT

1.    Plaintiff is an Alabama limited liability company, whose principal office is at 301 East Grubbs Avenue, Enterprise, Alabama, 36330-2612.

2.    Defendant, Huff and Associates Construction Co, Inc, is an Alabama business corporation, whose principal office is at 1220 Fox Run Parkway, Opelika, Alabama, 36803.

3.    Defendant, Travelers Casualty and Surety Company of America (" Travelers"), is a corporation organized under the laws of the State of Delaware. Travelers is qualified to do business in the State of Alabama, and does business throughout the state, including Randolph County and Lee County, Alabama.

## COUNT ONE

4.    On or about June 18, 2003, the Plaintiff and the Defendant, Huff, entered into a Subcontract, wherein the Plaintiff provided to the Defendant, Huff, certain heating, air conditioning and ventilating services and construction.

18

5.  Defendant, Huff, owes Plaintiff the sum of $159,209.60 for work, labor and materials provided for the Defendant, Huff, by the Plaintiff pursuant to the Subcontract dated June 18, 2003, at the Defendant, Huff's, request.

6.  Travelers issued Payment and Performance bonds on the project, with Defendant, Huff and Associates Construction Company, Inc., as general contractor.

7.  Plaintiff, Stinnett, has made demand upon Travelers for payment of the sums due it on the project, March 9, 2005, but despite the demand the Defendant, Travelers, has failed and /or refused to pay the Plaintiff the sums due it.

Wherefore Plaintiff demands judgment against the Defendants in the sum of $159,209.60, for interest and cost.

## COUNT TWO

8.  On or about November 18, 2003, the Plaintiff and the Defendant, Huff, entered into a Subcontract, wherein the Plaintiff provided to the Defendant, Huff, certain heating, air conditioning and ventilating services and construction.

9.  Defendant, Huff, owes Plaintiff the sum of $52,753.89 for work, labor and materials provided for the Defendant, Huff, by the Plaintiff pursuant to the Subcontract.

10. Travelers issued Payment and Performance bonds on the project, with Defendant, Huff and Associates Construction Company, Inc., as general contractor.

11. Plaintiff, Stinnett, has made demand upon Travelers for payment of the sums due it on, November 5, 2004, but despite the demand the Defendants have failed and refused to pay the Plaintiff the sums due it.

Wherefore Plaintiff demands judgment against the Defendants in the sum of $52,753.89 interest and cost.

Respectfully submitted,

**S. Sanford Holliday, Esq.**

19

Attorney for Plaintiff
4521 U. S. Highway 431
Post Office Box 727
Roanoke, Alabama  36274
Telephone: (334) 863-2717
SJIS:  HOL O31

Plaintiff request service on the Defendant, Travelers, as follows by Certified Mail:

Travelers Casualty and Surety Company of America
c/o CSC Lawyers, Inc.
150 South Perry Street
Montgomery, Alabama 36104

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the **28th**day of **September, 2005**  mailed a copy of the foregoing to the following individual, by United States Mail, properly addressed, with first class postage prepaid:

Jeffrey Tickle
P.O. Box 230
Opelika, Alabama 36801

**S. Sanford Holliday, Esq.**
Attorney for Plaintiff

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| **STINNETT GROUP, LLC, d/b/a** ) <br> **STINNETT HEATING and COOLING,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **HUFF and ASSOCIATES** ) <br> **CONSTRUCTION COMPANY, INC.** ) <br> **and TRAVELERS** ) <br> ) <br> **Defendant.** ) | **CASE NO.: CV-04-797** |

FILED

NOV 2 9 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

### ANSWER TO AMENDED COMPLAINT

COMES NOW Defendant, Huff and Associates Construction Company, Inc. ("Huff") and files this, it's Answer to Plaintiff's ("Stinnett") Complaint:

1. Huff admits that the Plaintiff is an Alabama limited liability company.

2. Huff admits the allegations set forth in Paragraph Two of Plaintiff's Amended Complaint.

3. Huff admits the allegations set forth in Paragraph Three of Plaintiff's Amended Complaint.

4. Huff admits the allegations set forth in Paragraph Four of Plaintiff's Amended Complaint.

5. Huff denies the allegations set forth in Paragraph Five of Plaintiff's Amended Complaint and demands strict proof thereof.

6. Huff denies the allegations set forth in Paragraph Six of Plaintiff's Amended Complaint and demands strict proof thereof.

7. Huff is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph Seven and hencefore they are therefore denied.

8. Huff admits the allegations set forth in Paragraph Eight of Plaintiff's Amended Complaint.

9. Huff denies the allegations set forth in Paragraph Five of Plaintiff's Amended Complaint and demands strict proof thereof.

21

SCANNED

10.    Huff denies the allegations set forth in Paragraph Five of Plaintiff's Amended Complaint and demands strict proof thereof.

11.  Huff is without sufficient information or knowledge to admit or deny the allegations set forth in Paragraph Seven and hencefore they are therefore denied.

## AFFIRMATIVE DEFENSES

1.  The Plaintiff's claim fails to state a claim upon which relief can be granted.

2.   The Plaintiff has failed to satisfy one or more conditions precedent to its contract to bring this action, and therefore Plaintiff has waived its Complaint against the Defendant.

3.  The Plaintiff's claim is barred in whole or in part by its failure to deliver to timely and properly perform its contract and additional costs may and have been incurred by Huff as a result of Stinnett's untimely performance pending final inspection acceptance by the owner.

4.  If it is determined that Stinnett is owed any amount pursuant to its contract with Huff, that amount should be reduced by the damages incurred by Huff as a result of Stinnett's untimely delivery of equipment or delivery of defective equipment and/or negligent work.

5.  Huff pleads the affirmative defense of waiver.

6.  Huff pleads the affirmative defense of release.

7.  Huff pleads the affirmative defense of credit, set-off, and payment.

8.  Huff denies each and every material allegation set forth in Counts One and Two not herein admitted, and demands strict proof thereof.

9.  Huff denies each and every material allegation of the Complaint not herein admitted and demands strict proof thereof.

10.  Huff affirmatively pleads the applicable statute of limitations.

11.  Huff firmly avers that Counts One and Two of the Complaint are so vague to make it impossible to defend against them.

12.  Huff affirmatively pleads that Plaintiff lacks standing to sue.

13.  Huff adopts and incorporates any pleadings or affirmative defenses the Defendants, Travelers Casualty & Surety Company of America.

14.  Huff affirmatively pleads any other matter constituting an affirmative defense.

15.  Huff reserves the right to plead such other affirmative defenses that may be come known as this matter progresses.

22

Respectfully submitted,

JEFFREY G. TICKAL (TIC001)
Attorney for Defendant, Huff & Associates
Construction Company, Inc.
Gullage & Tickal, LLP
511 Geneva Street
P.O. Box 711
Opelika, AL  36803-0711
334-737-3733

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Answer to Amended Complaint upon the following parties by placing a copy of the same in the United States mail, postage prepaid, on this the 29th day of November, 2006.

Christopher J. Hughes
Samford & Denson, LLP
709 Avenue A
Opelika, Alabama  36801

J. E. Sawyer, Jr.
203 South Edwards Street
Enterprise, AL  36330

JEFFREY G. TICKAL

23

Section 3a.

## SUBCONTRACT



Subcontract No. 151-15700-03

THIS AGREEMENT made this 18th day of November, 2003 by and between *Stinnett Heating and Cooling* whose principal office is at

*473 Glover Avenue, Enterprise, Alabama 36330*, hereinafter called the "Subcontractor," and *Huff and Associates Construction Co.,*

*Inc.,* a corporation, whose principal office is at 1220 Fox Run Parkway, Opelika, AL 36803, hereinafter called the "Contractor."

# WITNESSETH:

*For the consideration hereinafter named, the Subcontractor and Contractor agree and bind themselves as follows:*

### Section 1.

(a) The Subcontractor agrees to furnish all labor, materials and equipment and perform all work necessary to fully perform and complete the following part or parts of the work of the General Contract in all respects as is therein required of the Contractor, and all work incidental thereto necessary for a complete job, hereinafter sometimes called the "Work," namely: **Division 15 Heating, Air Conditioning and Ventilating Work (HVAC).** The Subcontractor will furnish all materials and labor, including all necessary scaffolding, and fully construct and in a good, substantial, thorough and workmanlike manner, perform and in every respect complete, the necessary **Heating, Air Conditioning and Ventilating Work including the alternate party barn, including but** not limited to all systems, all associated excavation and backfill, all concrete work associated with HVAC, clean-up, any firestopping; any demolition, relocation and patch-back of existing HVAC items all as indicated and required including Specification Division 15 Heating, Air Conditioning and Ventilating complete. All work to be in accordance with the plans, specifications; provide all project close out, any and all other related items, etc., the furnishing of all equipment and tools required for the above job all in accordance with the plans and specifications and changes as prepared by *Cunningham and Associates, Inc.* This contract shall include all Labor, Materials, Drinking water, Tools, Equipment, Facilities, Supervision, Management, Financing, Services, Shop Drawings, Submittals, Retesting, Taxes, Insurance (Workman's Compensation and General Liability Certificate of Insurance required before work is started), licenses, clean-up, safety requirements (see Exhibit "A"), and other items necessary for the proper execution and functioning and shall make all installations and connections necessary, specified, customary or otherwise appropriate to perform fully, etc., for a complete job in all respects acceptable to the owner, architect, and general contractor.

NOTE: SPECIFICATION OR DRAWING REFERENCES INCLUDED IN THE PRECEEDING STATEMENT OF SUBCONTRACTOR WORK ARE APPLICABLE BUT NOT NECESSARILY ALL INCLUSIVE.

All work performed shall conform to Governing Body Code requirements. This contract shall include in every respect, without exception, all labor, materials and equipment necessary to complete all Heating, Air Conditioning and Ventilating Work, ETC. installation, and work incidental thereto as shown on the plans, specifications and revisions.

Sign and return within 10 calendar days.

FOR:    *Kappa Alpha Fraternity House, Auburn, Alabama*

FOR:    *Nu Social Society, Inc.,* with whom the Contractor has heretofore entered into a General Contract to furnish all labor and materials and perform all work required for the Project, strictly according to the plans, specifications, addenda (1, 2, 3, 4, 5, 6, & 7), and alternates (2, 3, 4, & 6) prepared by McKee and Associates, Architecture and Interior Design (hereinafter called the "Architect" and/or "Engineer"), which are made a part of said General Contract, and which are hereby made a part of this Subcontract insofar as they relate to the Work undertaken herein by Subcontractor.

(b) Subcontractor shall procure and provide at its expense all fees, bonds, permits and licenses necessary to perform the Work.

(c) Subcontractor shall furnish all rigging, hoisting, plant and equipment, operators, scaffolding, ladders, staging, temporary protection, small tools, and everything necessary to perform the Work for this Subcontract, and for inspection by the Owner, Contractor, and Architect/Engineer.

(d) Subcontractor shall furnish all layout and engineering as required to perform the Work of this Subcontract.

151-15700-03

Page 1 of 12

24



**Section 2.** Contractor agrees that it will pay to Subcontractor, in accordance with the provisions of Section 8, and subject to the provisions of Section 9 and subject to any increase or decrease resulting from changes authorized pursuant to this Subcontract, the sum One Hundred Ten Thousand Thirteen and no/100ths dollars ($110,013.00).

**Section 3.**
(a) Time is of the essence for this Subcontract. The Subcontractor is to execute this Subcontract with sufficient speed and diligence to enable the Contractor and other subcontractors to comply with their schedules. Subcontractor shall not delay or stop its Work due to any dispute of any kind between the parties.

(b) All required shop drawings, erection drawings, samples, test reports, and/or certificates, submittals and all other data as required will be submitted for approval as soon as possible and in ample time to secure approval and meet the scheduled delivery, installation and completion dates for the Work. Subcontractor must inform Contractor, in writing, of any deviations in the shop drawings, submittals, and the samples from the requirements of the General Contract; provided, no such notice of a deviation shall relieve Subcontractor of its obligation to perform the Work in accordance with the requirements of the General Contract unless specifically approved in writing by the Contractor, Owner and Architect/Engineer.

(c) It is expressly UNDERSTOOD AND AGREED by and between the parties hereto that time is and shall be considered the essence of the contract on the part of the said Sub-contractor, and in the event that the said Sub-contractor shall fail in the performance of any milestone dates set forth below or complete the entire work to be performed under this contract, by and at the time or times herein mentioned or referred to, the said Sub-contractor shall pay unto the said Contractor, as and for liquidated damages, and not as a penalty, the sum of $300 per day, in view of the difficulty of estimating such damages with exactness, is hereby expressed, fixed, computed, determined and agreed upon as the damages which will be suffered by the Contractor by reason of such default; and it is understood and agreed by the parties of this contract that the liquidated damages hereinbefore mentioned are in lieu of the actual damages arising from such breach of this Contract, which said sum the Contractor shall have the right to deduct from any moneys otherwise due or to become due to the said Sub-contractor, or to sue for and recover compensation or damages for the non-performance of this contract at the time or times herein stipulated or provided for.

The Subcontractor knows that the Contractor must have his contract performed on or before the 1st day of July, 2004; and it is therefore understood and agreed that the work provided for herein shall be completed in congruence with that time frame and to that end the Sub-contractor shall complete the work in phases in such a manner that will in no way hinder the completion of the contract.

**Section 4.**
(a) The Subcontractor agrees to begin its Work when notified by the Contractor and will carry forward and complete its Work as rapidly as the Contractor may judge that the progress of the Work will permit, and so that Subcontractor's Work will not cause delay in the progress of Contractor's Work or other branches of the work carried on by other subcontractors. Subcontractor agrees that Contractor may require Subcontractor to prosecute some portions of the Work in preference to other portions of the Work as Contractor may specify and that multiple mobilizations may be required.

(b) Subcontractor shall be liable to Contractor for any and all actual damages incurred by the Contractor as a result of the Subcontractor's default or breach of any provision of this Subcontract, including, but not limited to, actual damages caused by Subcontractor's delay; actual damages shall include, but not be limited to, any liquidated damages, litigation expenses and attorney's fees, incurred by the Contractor as a result of Subcontractor's default, breach or delay.

(c) Contractor shall not be liable to Subcontractor for delay to Subcontractor's Work caused by the act, neglect or default of the Owner, or the Architect/Engineer, or by reason of fire or other casualty, or on account of riots or of strikes, or other combined action of the workmen or others, or on account of any acts of God, or any other cause beyond the Contractor's control.

**Section 5.** If the Subcontractor should (a) be adjudged bankrupt, or (b) if it should make a general assignment for the benefit of its creditors, or (c) if a receiver should be appointed on account of its insolvency, or (d) if the Subcontractor should fail to carry forward and complete its Work as provided in this Subcontract as rapidly as the Contractor may judge that the progress of the Work will permit, or (e) if it should become insolvent or should fail to make prompt payment for materials or labor used on the job, or (f) should fail to comply with instructions of the Architect or Engineer or with applicable portions of laws, or (g) if it should otherwise be guilty of a breach of this Subcontract, or (h) if it should be determined by a governmental agency that the Subcontractor is in violation of the standards and/or requirements of the Occupational Safety and Health Act of 1970, as amended, as said Act applies to the employers and employees of the construction industry, and a citation of violation is issued by said governmental agency which is not abated by the Subcontractor within the time provided by law, then the Contractor may, after giving Subcontractor written notice in the manner specified in Section 17 hereof, without prejudice to any other right or remedy it may then have, proceed as follows: (1) provide, or have others provide, such materials, supplies, equipment and labor as may be necessary to complete the Work, pay for same and deduct the amount so paid from any money then or thereafter due Subcontractor; or (2) withhold payment of any estimate, pending a curing of default satisfactory to Contractor, other provisions of this Subcontract notwithstanding; or (3) terminate the Work of the Subcontractor, enter upon the premises and take possession, for use in completing the Work, of all the materials, instruments, supplies, tools, equipment and appliances of the Subcontractor thereon and complete the Work, or have the Work completed by others, and not

25

████ ████contractor for any further payments under this Subcontract until final payment is due, and then only if and to the extent ████ █████ balance of the amount to be paid under this Subcontract exceeds the expense of Contractor in completing the Work or ████ █████ Work completed by others. The contractor reserves the right, notwithstanding the above provisions, to accelerate the ████ █████rs work by performing up to twenty (20) percent of the work described herein in whole units and deduct the unit price for ████ ██le unit performed from the contract amount.

If the amount expended by Contractor under (1) above, or the cost of completing the Work under (3) above, (such amounts or costs to include, but not be limited to, compensation for additional managerial, legal or administration services), exceeds the unpaid balance of the Subcontract price herein stated, Subcontractor shall pay Contractor such excess; if the unpaid balance of this Subcontract shall exceed said amount expended by Contractor or shall exceed the cost of completing the Work, the excess shall be paid to the Subcontractor. The rights and remedies granted to Contractor under this section and pursuant to other provisions of this Subcontract shall be cumulative, and are not intended to be in lieu of any legal right or remedy which Contractor may have against Subcontractor for breach of this Subcontract or default hereunder. The exercise by Contractor of any of its remedies shall not release Subcontractor from its obligations under this Subcontract.

**Section 6.** Subcontractor assumes exclusive liability for all contributions, taxes or payments required to be made on behalf of or because of employees of the Subcontractor by the Federal and State Unemployment Compensation Acts, Social Security Acts or any amendments thereto, and by all other or future Acts, State or Federal, requiring the payment of similar contributions or taxes, and for all sales tax and use tax. Subcontractor assumes exclusive liability for the payment of all applicable dues, benefits and contributions to any labor union or organization or welfare fund, with respect to its own employees.

**Section 7.** The Subcontractor agrees that it has read and is familiar with the General Contract, including plans, drawings, specifications, general conditions, supplementary conditions, special conditions and provisions, addenda and other documents incidental thereto (herein collectively called the "General Contract") and affecting this Work, and Subcontractor agrees to be bound to the Contractor by the terms thereof insofar as they relate in any way to the Work undertaken herein by Subcontractor, and agrees to assume toward Contractor all the obligations and responsibilities which the Contractor, by the terms of the General Contract, assumes toward the Owner and/or Architect/Engineer. Anything pertaining to the Subcontractor's Work that is mentioned in the specifications but not shown in the plans or drawings, or shown in the plans or drawings but not mentioned in the specifications, shall be of like effect as if shown or mentioned in both, and in the event of any conflict, contradiction or ambiguity in the plans, drawings, specifications or █ ██er documents applicable to the Work, then the stricter, greater or higher quality requirement or obligation shall control. Subcontractor will be bound by all rulings, determinations and directives of the Architect/Engineer and/or Owner to the same extent Contractor is so bound. In the event Contractor is required by the terms of the General Contract to arbitrate any controversy with the Owner or with any other prime or subcontractor or supplier and such controversy involves, in whole or in part, the Work or materials of Subcontractor, then Subcontractor agrees, upon demand of Contractor, to participate in the prosecution or defense of such controversy in said arbitration and to be bound by the result thereof. Subcontractor shall not commence or maintain any action or proceeding against Contractor for any damages resulting from any default, breach or interference by the Owner or for extra work ordered by Owner or by virtue of any deduction or refusal to pay by the Owner, except to the extent of the sum ultimately obtained from the Owner on account thereof by Contractor. The Subcontractor in doing the Work acts as an independent contractor and not as an agent or employee of the Contractor. In case of conflict between the provisions of the General Contract between the Owner and the Contractor and the provisions of this Subcontract, the provisions of this Subcontract shall prevail in any matter between the Contractor and the Subcontractor. Subcontractor agrees to include the necessary clauses as required by the General Contract in all agreements entered into by Subcontractor with its subcontractors, suppliers, materialmen and vendors.

**Section 8.**
(a) The Contractor shall pay the Subcontractor for the Work performed during the month less 10% retainer on or about the 20th of the following month, provided, notwithstanding anything to the contrary that may be contained within any of the contract documents including but not limited to the General Contract, Subcontractor specifically acknowledges that no payment, partial or final, shall be due or owed to the Subcontractor from Contractor or Contractor's surety unless and until, as a condition precedent, Contractor receives payment for Subcontractor's Work from the Owner. The amount of each progress payment to the Subcontractor shall be no more than the percentage of completion allowed to the Contractor for the Work of the Subcontractor applied to the contract sum of the Subcontractor plus the amount allowed for material and equipment suitably stored on site by the Subcontractor less the percentage retainage specified above. Subcontractor shall not submit its request for final payment or bill beyond 98% complete until all closeout documents have been submitted to Contractor for approval. Final payment shall be due 30 days after completion of the Project provided it shall not be due or owed from Contractor or Contractor's surety until, as conditions precedent (1) the Subcontractor has met the requirements and conditions of this Subcontract, (2) Contractor has received final payment for Subcontractor's Work from the Owner, (3) Subcontractor has furnished a Final Lien Waiver and Release to Contractor in the form and quantity acceptable to Contractor and Owner, and (4) Subcontractor has properly furnished all project close-out documents to Contractor. From any amount otherwise owed Subcontractor, the Contractor is expressly entitled and authorized to withhold and deduct a reasonable sum based upon the breach or impending breach of any provision of this Subcontract by the Subcontractor, or

151-15700-03                                                                                          Page 3 of 12

[...] on the assertion (or reasonable likelihood of assertion) of any lien, claim, garnishment, attachment, or other levy of a nature covered by Section 9 of this Subcontract, or otherwise, until such breach, controversy, lien, claim, garnishment, attachment or controversy has been resolved. It is hereby expressly agreed that the Contractor may set off against amounts owed by the Contractor to the Subcontractor on any contract or contracts between them any amount or amounts owed, or claimed to be owed, to the Contractor by the Subcontractor under any contract or contracts between the Contractor and the Subcontractor. Payment to Subcontractor shall not be interpreted as an approval of the Work, or materials, or any part thereof. All payments received by Subcontractor from Contractor shall be held as a trust fund and shall not be used to satisfy or secure any indebtedness other than one owed by the Subcontractor to a person or entity furnishing labor or materials for use in performing the Subcontractor's Work. Acceptance of final payment by the Subcontractor constitutes a general release of the Contractor and the Contractor's surety from all claims and liability of whatever nature.

(b) Subcontractor shall, as often as requested by Contractor, and as a condition precedent to any payment hereunder: (1) furnish sworn statements showing all parties who furnished labor or materials with reference to the Work, together with their names and addresses and the amount due or to become due each party; like statements may be required from any subcontractors of the Subcontractor and/or the Subcontractor. (2) Furnish Contractor with evidence or documentation satisfactory to Contractor (including but not limited to original affidavits, receipts, releases, and/or lien waivers in a form and quantity acceptable to Contractor and Owner) that Subcontractor has paid in full for all labor, materials and supplies used in the Work through the date of the payment request, whether the request is for interim or final payment, and (3) furnish Contractor a sworn statement of account documenting amounts received and amounts due or to become due under this Subcontract.

(c) The Subcontractor shall pay all persons or parties who have furnished labor or material for use in and about the Work covered by this Subcontract; provided, however, the Contractor reserves the right to pay any part or all of any payment or payments otherwise due Subcontractor by checks made payable jointly to Subcontractor and any person or party supplying labor or materials or services to Subcontractor or solely to any such person or party. Any such joint or sole payment(s) shall reduce any amount otherwise due or owed Subcontractor under this Subcontract, Subcontractor shall not acquire any right, title or interest in or to the amount(s) so paid, and the amount(s) so paid shall not be property of any estate pursuant to any provisions of any state or federal bankruptcy statute.

### Section 9.

(a) Subcontractor covenants and agrees to defend, indemnify, exonerate, and hold harmless the Owner, Contractor, and Contractor's surety with respect to (1) every claim or action for breach of contract or otherwise filed or presented by the Owner or other person, firm or entity arising out of, or related to any work or operation performed by, for, or on behalf of, the Subcontractor, (2) every lien notice, lien affidavit and lien suit filed or presented by any materialman, laborer or subcontractor of Subcontractor, in connection with the Subcontract Work, (3) every other claim or action of any kind whatsoever, filed or presented by any materialman, laborer or subcontractor of Subcontractor, in connection with the Subcontract Work, and (4) every garnishment, attachment or other levy made by a creditor of Subcontractor against the assets or funds of Subcontractor in the hands or custody of the Owner, or the Contractor. It is agreed that the Subcontract price as stated in Section 2 above, shall be offset or reduced by the amount necessary and proper to defend, indemnify, exonerate and hold harmless the Owner, Contractor, and the Owner with respect to any of the foregoing described claims, notices, affidavits, actions, garnishments, attachments and levies. This indemnity shall include all payments made by the Contractor and all reasonable expenses, attorney's fees, and other costs incurred by Contractor in connection therewith. Subcontractor agrees to give Contractor notice and furnish it copies of any claim, action or lien within three (3) days of receipt of same by Subcontractor.

(b) The Subcontractor warrants that title to all Work, material and equipment covered by any application for payment will pass to the Owner either by incorporation in the construction or upon the receipt of payment by the Subcontractor, whichever occurs first, free and clear of all liens, claims, security interest or other encumbrances.

### Section 10.
The Subcontractor shall not assign, sublet or transfer this Subcontract, or portion of this Subcontract, or any portion of the proceeds thereof, without first obtaining the written consent and approval of an officer of the Contractor. The Contractor shall not be obligated in anywise to accept or acknowledge any such subletting, assignment, or transfer unless the Contractor has so approved.

### Section 11.

(a) Subcontractor is wholly responsible for the safety of its own employees. As to its own employees, the Subcontractor shall be solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work performed or to be performed by its employees: (I) as stated in the general conditions of the General Contract, (II) as required by OSHA, and (III) as required by all applicable Federal, State and local laws. In connection with this Subcontract Work and at its work site the Subcontractor shall erect, establish and maintain, as required by existing laws, conditions, and progress of the Work, all reasonable safeguards for safety and protection, including the posting of danger signs and other warnings against hazards. Subcontractor shall promulgate safety regulations and shall notify the Owner, the Contractor, and the user of adjacent utilities or facilities of known safety hazards relating to the Work performed or to be performed by Subcontractor.

27

Prior to commencing its Work at the job site, Subcontractor shall designate a responsible employee at the site whose duty shall be the prevention of accidents. This employee shall be the Subcontractor's job superintendent (or foreman, if there is no superintendent), unless otherwise designated in writing by the Subcontractor to the Contractor.

Subcontractor assumes exclusive liability and covenants and agrees to defend, indemnify and hold harmless the Owner and Contractor as to any penalties assessed against the Owner or Contractor by the United States Department of Labor for violations of the Occupational Safety and Health Act of 1970 and for violations of any applicable statute, law or ordinance which are determined by a governmental agency to have been committed by the Subcontractor or its employees.

(d) Subcontractor shall notify Contractor immediately of any accident involving injury to any employee(s) of Subcontractor and furnish all information for filing of an accident and injury report by Contractor. Subcontractor is to see that all injuries involving its employee(s) receive proper and prompt attention.

Section 12. The Subcontractor hereby covenants and agrees to defend, hold harmless, indemnify and exonerate the Contractor, the Owner, and the Architect/Engineer (and their respective agents and employees) as to and from all liability, claims, lawsuits and demands (including all judgments and settlements made at arm's length and all reasonable attorneys' fees and litigation expenses connected therewith) for personal injury, death (including personal injury or death to the Subcontractor's own employee(s), whether or not said personal injury or death is compensable under any applicable Worker's Compensation law, the immunity protection of which Subcontractor hereby waives as to this indemnity agreement) and/or property damage arising out of any work or operation performed by, for or on behalf of the Subcontractor. The foregoing covenant and agreement shall include all such liabilities, claims, lawsuits, demands, judgments, settlements, reasonable attorneys' fees and litigation expenses, where it is charged, alleged, or proven that the Contractor, the Owner, and/or the Architect/Engineer (or its agents or employees) was/were negligent in causing or contributing to such injury, death or property damage. The Subcontractor's liability insurance policies shall each contain contractual insurance coverage, which protects the Subcontractor, the Contractor, the Owner, and the Architect/Engineer (and their respective agents and employees) as to the covenants contained in this subsection. Any provision in this subsection that is or has been judicially determined to be invalid or void under the laws of the state in which this contract is to be performed shall be deemed modified to the extent necessary, or deleted if absolutely necessary so as to render the subsection valid, and so that the indemnity provision shall apply to the maximum extent permitted under said state's laws and carry out the intentions of the parties, as expressed herein, to the maximum possible extent.

Section 13. No work is to be performed or deliveries made after regular working hours, or on Saturday or Sunday without the prior written permission of Contractor and a representative of Contractor being present.

Section 14. Should Subcontractor default in any of the provisions of this Subcontract, and should Contractor employ an attorney to enforce any provision hereof, or to collect damages for breach of this Subcontract, Subcontractor agrees to pay Contractor such reasonable attorneys' fees as Contractor may incur or expend therein. The Subcontractor waives all rights of exemption with respect to all obligations contained in this Subcontract.

Section 15. This Subcontract and its construction and enforcement shall be governed by the law of the State where the Project is located unless the laws of a different state governs the General Contract in which case the law of the state that governs the General Contract shall also govern under this Subcontract.

Section 16. The failure of Contractor to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

Section 17. Any notice required to be given by either party to this Subcontract to the other shall be in writing and may be given by personal delivery, facsimile, or telegram to the other party or by mailing by registered or certified mail (postage prepaid) to the other party at the address stated in this Subcontract. Any such notice shall be considered given and effective immediately upon personal delivery, delivery (whether oral or written) of the telegram, receipt of the facsimile, or depositing said notice in the mail, as the case may be.

Section 18. This Subcontract contains the entire agreement between the parties hereto and any additions hereto or changes herein must be made in writing and signed by an officer of Contractor and shall be void and of no efficacy unless so made.

Section 19.    Insurance.

(a) Subcontractor's Insurance: The Subcontractor will maintain such insurance as will insure it from claims under Workmen's Compensation Acts and it, the Contractor, and the Owner from any other claims for property damage and claims for personal injury, including death, which may arise from operations under this Subcontract, whether such operations be by itself or any of its subcontractors or anyone directly or indirectly employed by either of them, with minimum limits of liability as follows:

(b) Workmen's Compensation Insurance:    Statutory limits as required by applicable State or Federal Law

151-15700-03    Page 5 of 12

28

| Employer's Liability | Limits: | Each accident | $ 1,000,000.00 |
|---|---|---|---|
| | | Disease Policy Limit | $ 1,000,000.00 |
| | | Disease Each Employee | $ 1,000,000.00 |

(c) Commercial General Liability-Bodily Injury and Property Damage Insurance:

| | Limits: | General Aggregate | $ 2,000,000.00 |
|---|---|---|---|
| | | Products/Completed Operations Aggregate | $ 2,000,000.00 |
| | | Personal and Advertising | $ 1,000,000.00 |
| | | Injury | $ 1,000,000.00 |
| | | Each Occurrence | $ 1,000,000.00 |

(d) Automobile Liability-Bodily Injury and Property Damage Insurance, combined single limit:

| | Limits: | Combined single Limit or Bodily Injury | $ 1,000,000.00 |
|---|---|---|---|
| | | (Each Person) | $ 1,000,000.00 |
| | | Bodily Injury (Each Accident) | $ 1,000,000.00 |
| | | Property Damage | $ 1,000,000.00 |

(e) Umbrella (excess insurance on all above liability insurance):

| | Limits: | Each Occurrence | $ 5,000,000.00 |
|---|---|---|---|
| | | Aggregate | $ 5,000,000.00 |

(f) Equipment Floater Insurance insuring equipment used by the Subcontractor on the Project at its full replacement value.

(g) The Subcontractor's commercial general liability and automobile liability insurance shall be written to provide the following coverages: (1) the general liability coverage shall include the following coverages: premises/operations including blasting, collapse and underground, products liability, completed operations, independent contractors, broad-form property damage, personal injury, and contractual liability insurance coverage, the latter being as contemplated in Section 12 of this Subcontract, and (2) the automobile liability coverage shall include the following coverages: all owned autos, hired autos, and non-owned autos. Limits of liability under general and automobile liability insurance coverage shall be written on an occurrence basis for both bodily injury liability and property damage liability. If the Work of the Subcontractor involves anything that is subject to Pollution Exclusion(s) in any of the above policies, the Subcontractor shall purchase insurance that will insure the pollution risks and exposures in an amount and with an insurance company(ies) acceptable to Contractor. The Contractor, and the Owner (and if required by the General Contract, the Architect and/or Engineer, as the case may be) shall be named as additional insureds on the Subcontractor's policies (except the Workmen's Compensation) for this Project, and the Subcontractor's policies shall be endorsed to specify (1) that Contractor, and Owner (and if required by the General Contract, the Architect and/or Engineer, as the case may be) have been named as additional insureds and that the insurance coverage afforded to the additional insureds is primary insurance; and (2) that Subcontractor and its insurance company(ies) waive all rights of subrogation against the additional insureds. The limits and coverages set forth in this Paragraph A are the minimum limits and coverages required by this Subcontract and are not an indication of the type of coverage and limits the Subcontractor might need to protect the Subcontractor. All Subcontractor's insurance policies shall be written with insurance companies that are acceptable to Contractor. Completed operations insurance shall be maintained for at least one year after completion of the Subcontractor's Work pursuant to this Subcontract. Umbrella coverage can be used to satisfy the limits of basic general liability and automobile liability limits.

(h) Certificates of Insurance: The Subcontractor will submit to the Contractor three (3) copies of Certificates of Insurance certifying the type and the amount of coverage and that the insurance policies carried by it were in force before the Work started and certifying that these policies will not be canceled or materially changed during the period of construction by an endorsement added to the policies and certificates reading substantially as follows: "The policy herein referred to is not cancelable or subject to a reduction of coverage by the Insurer during the 20 day period after Huff and Associates Construction Co. Inc., has received written notice (as evidenced by return receipt of registered letter) of the Insurer's intention to cancel or reduce the coverage." The certificate shall indicate the coverage above as specified, shall state that the Contractor, and Owner (and if required by the General Contract, the Architect and/or Engineer, as the case may be) are additional insureds and that the insurance coverage afforded to the

151-15700-03

29

additional insureds is primary insurance, and shall provide that Subcontractor and its insurance company(ies) waive rights of subrogation against the additional insureds.

The Contractor will not carry insurance coverage for the theft of any materials, tools or equipment on the job site nor will it carry any type insurance covering casualties to any materials, tools or equipment of the Subcontractor. The Subcontractor therefore assumes the risk of theft of its materials, tools, and equipment stored, installed or used on the job site and the risk of all other casualties to its tools, materials and equipment. The Subcontractor also assumes the risk of damage to its completed or partially completed Work to the extent same is not covered by any applicable Builder's Risk policy.

(j)  Contractor's job superintendent has been advised that subcontractors are not to begin work until such time as certificates of insurance have been furnished to Contractor, this Subcontract has been executed by both Contractor and the Subcontractor, and other, if any, pre-work requirements have been fulfilled by Subcontractor.

(k)  Subcontractor shall require its subcontractors to maintain insurance coverages as specified above, including but not limited to requiring that such insurance policies be endorsed to specify that Subcontractor, Contractor and Owner are named as additional insureds on such policies for this Project.

**Section 20.** Subcontractor shall provide safe and sufficient facilities at all times for inspection of Subcontractor's Work by Contractor, the Architect, the Engineer or their duly authorized representatives, and shall upon 24 hours' written notice from Contractor, proceed promptly to take down all portions of the Work and remove from the grounds and buildings all material, whether incorporated into the Work or not, which the Architect and/or Engineer shall condemn or fail to approve and Subcontractor shall promptly make good all such work, and all other work damaged or destroyed in removing or making good said condemned or unapproved work.

**Section 21.** The Subcontractor shall be responsible for delivery, unloading, storage, moving and protection of all materials and/or equipment supplied or used in connection with the Work under this Subcontract. All deliveries, location of job sites, storage facilities and office trailers, and job-site parking must be coordinated with Contractor's on-site project superintendent. All materials and/or equipment supplied for the project other than under this Subcontract, but which are to be installed by Subcontractor under this Subcontract, shall be received, unloaded, distributed, stockpiled and inspected by Subcontractor upon delivery, and the Subcontractor shall notify the Contractor in writing of any and all deficiencies in such materials and/or equipment within twenty-four (24) hours of delivery; failure of Subcontractor to provide such notification to Contractor shall be considered acceptance by Subcontractor of such materials and/or equipment and Subcontractor shall be responsible for all costs associated with replacement materials and/or equipment and/or repairs arising out of or related to any such materials and/or equipment.

**Section 22.** Regular progress meetings will be held on site to be attended by all principal subcontractors. Subcontractor's office will be advised of the time and date of these meetings and Subcontractor shall be represented at these meetings by someone authorized to make decisions during these meetings for Subcontractor.

**Section 23.** Subcontractor shall give personal superintendence to the Work, or shall maintain a competent foreman or superintendent, satisfactory to Contractor, on the site of the Work at all times during the progress of the Work with authority to act for the Subcontractor. Subcontractor shall notify Contractor in writing, prior to commencement of Work at the job site, of the name(s) of the foreman or superintendent who will be on-site, and of the name of the employee who will be in charge of office work. Notification in writing shall be given to the Contractor prior to the Subcontractor making any changes in said individuals, and no changes in the foreman or superintendent shall be made without Contractor's prior written consent. Subcontractor shall coordinate its work with all other contractors, subcontractors, and suppliers on the Project so as not to delay, or be delayed on, the Project.

**Section 24.** The Subcontractor shall take necessary precautions to properly protect the Subcontractor's Work and the work and materials of others from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the work or property of the Owner, the Contractor or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor, or the Contractor may so remedy and deduct the cost thereof from any amounts due or to become due the Subcontractor.

**Section 25.** Until final completion of the Project, the Subcontractor agrees not to perform any work directly for the Owner or any tenants thereof, or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by the Contractor. All work for this Project performed by the Subcontractor shall be processed exclusively by the Contractor.

**Section 26.** The Subcontractor warrants to the Contractor and the Owner that all materials and equipment furnished under this subcontract will be new unless otherwise specified, and that all Work will be of good quality, free from faults and defects, fit, safe, sufficient for the purposes intended, and in conformance with the plans and specifications. All Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective and the Subcontractor shall be responsible for any such defective Work and shall promptly correct any such defective work. The Subcontractor further agrees to warrant its work as called for in the General Contract. The warranties and guarantees set forth herein are in addition to any other warranties or guarantees provided by law or by separate agreement. The Subcontractor further agrees to execute any special guaranties or warranties that shall be required for the Subcontractor's work prior to final payment.

151-15700-03                                                                                                                    Page 7 of 12

30

Section 27. Subcontractor shall at all times keep the work areas and the adjoining premises, driveways, and streets clean of dirt, dust and rubbish caused by Subcontractor's operations. At frequent intervals, and at all times when requested by the Contractor, Subcontractor shall remove from the site and properly dispose of all accumulation of rubbish, debris and other expendable construction materials. The Subcontractor shall broom clean each work area prior to discontinuing work in said area. This cleaning will be done by the Subcontractor at no expense to the Contractor and the clean up is to meet the job superintendent's approval. In case it becomes necessary, after notifying the Subcontractor in writing of its failure to properly clean up, for the Contractor to clean up the debris left by the Subcontractor, then any cost involved will be backcharged to the Subcontractor.

Section 28. Should the Owner suspend or terminate the General Contract or any part of the General Contract, which includes the Subcontractor's work, the Contractor shall so notify the Subcontractor in writing and upon receipt of said notice the said Subcontractor shall immediately stop the Subcontractor's work. In the event of such Owner suspension or termination, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the General Contract. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's sole expense, in the prosecution of any Subcontractor claim arising out of an Owner suspension or termination and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor.

Section 29. Subcontractor shall at all times supply a sufficient number of skilled workers to perform the work covered by this subcontract with promptness and diligence in accordance with Sections 3(a), 3(b), and Section 4(a) of this subcontract, and agrees, without cost to the Owner or Contractor, to work such overtime as necessary to comply with the requirements of said sections of this Subcontract. Should any workers performing work covered by this subcontract engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, Contractor may, at its option and without prejudice to any other remedies it may have, after Forty Eight (48) hours' written notice to Subcontractor provide any such labor and deduct the cost thereof from any monies then due or thereafter to become due Subcontractor. Further, Contractor may at its option, without prejudice to any other remedies it may have, exercise its remedies, including but not limited to termination, pursuant to Section 5 of this subcontract.

Section 30. The Contractor may, at any time, by written notice to Subcontractor, terminate (without prejudice to any other right or remedy of Contractor) the whole or any portion of this Subcontract for the convenience of the Contractor. Upon the receipt of such a written notice, Subcontractor will cease all on-site construction, if any, with regard to the portion (or all as the case may be) of the contract that is terminated. Subcontractor shall (1) cause such steps to be taken as necessary to protect the Work in place, material and equipment; (2) assign such of its purchase orders to the Contractor as Contractor may direct; (3) notify all subsubcontractors of the order to stop operations and cancel or assign such subsubcontracts to the Contractor as directed by the Contractor; (4) cooperate in every way to minimize the cost to the Contractor in stopping and securing the Work or transferring said Work and documentation to another Subcontractor if so directed by the Contractor; (5) transfer title to all work, services, uncompleted work, supplies, or any other material produced or services performed or acquired for the Work terminated as Contractor may direct; (6) transfer any plans, drawing, information and the like (completed or not) as Contractor may direct; and (7) complete performance of any Work not terminated. In such event, Subcontractor will be compensated only for the reasonable cost of, and a reasonable overhead and profit on, the acceptable work performed and/or materials furnished to the date of termination, less any payments theretofore made to the Subcontractor by Contractor on account thereof, provided, however, no payment, partial or final shall be due or owed to the Subcontractor from Contractor or Contractor's surety unless and until, as a condition precedent, Contractor receives payment for Subcontractor's Work from the Owner. In no event shall the total sums paid to Subcontractor exceed the subcontract price. In the event any exercise by Contractor of its remedies under Section 5 of this Subcontract shall be determined to have been wrongful, such exercise shall be deemed a termination for the convenience of the Contractor under this paragraph.

Section 31. Subcontractor acknowledges that the site has been investigated by it to determine the type, quality, quantity and character of the work to be performed. It is understood that the Subcontractor has thoroughly examined all factors relevant to it, included but not limited to, the drawings, specifications, geotechnical report (if provided), site conditions, and local and seasonal weather conditions. The geotechnical report (if provided) is not considered conclusive and it is the Subcontractors responsibility to investigate the site as it determines necessary. No representation or warranty is made by the engineer, owner or contractor regarding the accuracy, adequacy or content of the geotechnical report (if provided). The subcontractor should not rely on the information contained in the geotechnical report and should make its own investigation as to the character and condition of the site. Any work by the Subcontractor shall constitute acceptance of the site. No adjustment in contract time or sum shall be permitted in connection with a surface, subsurface, or concealed or unknown condition of any kind, including without limitation, any which are different from those indicated by the geotechnical report (if provided), plans or specifications.

Section 32. Subcontractor shall be granted an extension of time for delays in the performance of the Work only to the extent an extension is allowed the Contractor by the Owner for performance of the Work; provided, if Subcontractor is delayed by Contractor or other subcontractors of Contractor and Subcontractor gives both the notice as required below and acceptable documentation of the claimed delay, then Subcontractor shall be entitled to an extension of time equal to the delay. Regardless of the cause of the delay, the

31

contractor agrees it shall not be entitled to compensation or damages of any kind caused by or related to any delay in the performance of the Work except to the extent that Contractor shall receive such compensation or damages, from the Owner or other third party. Subcontractor shall not be entitled to an extension of time or to compensation or damages for any delay unless a written notice of that delay is delivered to Contractor within two-thirds of the time period allowed by the Contract Documents or within seven (7) calendar days of the beginning of the event causing the delay, whichever is the shorter period of time.

**Section 33.** The provisions of this Subcontract are severable in whole or in part. If any provision or part hereof is found to be invalid or unenforceable, the remainder of the Subcontract shall continue in full force and effect and such invalid or unenforceable provision may be limited in such a manner as to make it valid and enforceable. The parties agree that all provisions of this Subcontract which by their nature would survive termination of the Subcontractor's Work hereunder, termination of this Subcontract or completion of the work hereunder (including by way of illustration, provisions relating to warranty, indemnity, correction of work, claims, insurance and dispute resolution) shall survive all such events.

**Section 34.** Subcontractor, at the option of Contractor, shall submit to Contractor within ten (10) days from the date of this Subcontract, and before first payment hereunder is due, a correct and detailed schedule showing estimated cost of each part of the Work (with proper share of associated overhead and profit), the total of which shall equal the subcontract amount; such breakdown when approved by Contractor, and Architect or Owner, shall be used as a basis for verification of periodic estimates for partial payments. Subcontractor's pay application, with all backup required by Contractor and in form approved by Contractor, shall be delivered by Subcontractor to Contractor not later than the twenty fifth day of any month during which the Subcontractor has performed work or furnished materials to the job, for which Subcontractor requests payment. Subcontractor recognizes that changes may be made in the schedule of the Work and Subcontractor agrees to comply with such changes without additional compensation.

**Section 35.** (1) Subcontractor, in addition to its responsibilities under Section 11 of this Subcontract, and not in lieu thereof, agrees to abide by and enforce Contractor's "Project Safety Requirements" a copy of which is attached to and made a part of this Subcontract. Contractor shall have no duty to monitor Subcontractor's practices or performance of the Work for safety, and shall have no duty to stop any unsafe practices of Subcontractor or to ensure that Subcontractor's practices or methods of performing the Work are safe. (2) If requested by Contractor, Subcontractor agrees to implement, administer and enforce Contractor's Policy On Drugs and Other Prohibited Substances contained in Attachment A hereto (the "Policy") or a substance abuse control program substantially similar to the Policy. Contractor shall have no responsibility with regard to such implementation, administration and enforcement. (3) Material Safety Data Sheets (MSDS) are hereby requested on any and all materials involved in the scope of Subcontractor's work that are considered hazardous to health under OSHA Hazard Communication Standards.

**Section 36.** If this Subcontract is for or includes electrical, mechanical, plumbing, fire sprinkler, controls work, test and balance work and/or site work, Subcontractor shall be responsible for: (a) making all final connections to supply lines; (b) excavation, back-fill, compaction, and restoration of grades associated with the Work; (c) cutting, patching, dewatering, supports, and penetrations associated with the Work; and (d) fire stop, draft stop, and fire proof of all penetrations so as not to diminish and/or void the fire rating through assemblies in accordance with any applicable building code, rules or regulations. Subcontractor further agrees to coordinate with the mechanical and plumbing subcontractor(s), the electrical subcontractor, the fire protection subcontractor, the controls subcontractor, the sitework subcontractor, and the test and balance subcontractor to ensure a complete, functioning, and timely installation of all mechanical, plumbing, electrical and fire protection systems.

**Section 37.** If Contractor has another subcontract with Subcontractor and Subcontractor defaults in any manner under that subcontract, then at Contractor's option, such may be also treated as a default under this Subcontract. In that event, Contractor, at its option, may take any action or exercise any remedy available to it under this Subcontract or alternatively, Contractor may terminate this Subcontract.

**Section 38.** If this Subcontract requires Subcontractor to furnish payment and/or performance bond(s), such bond(s) shall be in form and substance, and from a surety company, acceptable to Contractor.

**Section 39.** Subcontractor hereby assigns to Contractor (and its assigns) all of its interest in any subcontracts and/or purchase orders now existing or hereinafter entered into by Subcontractor for performance of any part of the Work which assignment will be effective upon acceptance by Contractor in writing and only as to those subcontracts and/or purchase orders which Contractor designates in said writing. It is agreed and understood that Contractor may accept said assignment at any time during the course of construction prior to final completion. It is further agreed that all subcontracts and/or purchase orders shall provide that they are freely assignable by Subcontractor to Contractor and assigns. It is further agreed that such assignment is part of the consideration to Contractor for entering into this Subcontract with Subcontractor and may not be withdrawn prior to final completion.

**Section 40.** No provision of this Subcontract shall be construed more harshly or disfavorably against either the Contractor or the Subcontractor regardless of which party drafted the provision or for whose benefit such provision was included.

151-15700-03                                                                                    Page 9 of 12

32

**Section 41.** Both parties acknowledge, understand and agree that Contractor, in entering into this Subcontract, depends upon special trust, confidence and an ongoing special relationship between the parties, which arises out of the specific ability of the Subcontractor to accomplish the Work required by this Subcontract. Subcontractor hereby acknowledges that this Subcontract, by reason of said special relationship, may not be assumed and assigned without the prior express written consent of Contractor pursuant to 11 U.S.C. §365 or any similar statute, state or federal, AND SUBCONTRACTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE UNDER 11 U.S.C. §365 TO ASSUME AND ASSIGN THIS SUBCONTRACT WITHOUT THE EXPRESS WRITTEN AND PRIOR CONSENT OF CONTRACTOR.

**Section 42.** Notwithstanding any other provision hereof, in the event that Subcontractor is the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization or similar proceeding, federal or state, voluntary or involuntary, or any present or future law or act, Contractor is entitled to the automatic and absolute lifting of any automatic stay as of the enforcement of its remedies under this Subcontract against the Subcontractor, including, specifically, but not limited to, the stay imposed by §362 of the United States Bankruptcy Code, as amended. Subcontractor hereby waives the benefits of such automatic stay and consents to the immediate lifting of any such automatic stay, and will not contest any motion by Contractor to lift such stay.

**Section 43.** If Subcontractor needs to use an electric welder or welders or other tool(s) with similar demand requirements for electricity in order to perform its Work, then the Subcontractor shall supply one or more generators in order to supply the power for such welder(s) and tool(s).

**Section 44.** Commencement of the Work by the Subcontractor constitutes acceptance by Subcontractor of the substrate.

**Section 45.** Claims for extra work and changes in the work will only be allowed when written authorization has been given prior to execution of the work; Subcontractor waives all claims for any extra work or changes not so authorized. When such authority for extra work or changes in the Work is given without an agreed upon price, the fully documented claim must be submitted promptly upon completion of the extra work. Contractor may order changes in the Work without notice to Subcontractor's sureties consisting of additions, deletions, or modifications, such changes to be authorized by written order of the Contractor only; when so made, the Subcontract sum shall be adjusted accordingly. Where work is required to be done and the parties cannot agree as to whether such work is extra work or cannot agree as to the valuation of the addition, deletion or modification as herein provided, the performance of the same shall not be delayed, but Subcontractor shall nevertheless proceed with the work upon the written order of Contractor, it being understood that the progress of the work shall not be delayed by any controversy between the parties. If the Contractor orders a change in the Work or requests the Subcontractor to review a proposal for a change in the Work, the Subcontractor agrees to review the change, or proposal for change, and within two-thirds (2/3) of the time required by the General Contract or seven (7) calendar days, whichever is the shorter period of time, Subcontractor shall submit to Contractor a written proposal for the Work amply detailed and supported and conforming to the requirements of the General Contract and this Subcontract. Subcontractor agrees that it waives all its rights to both price and time adjustments if it fails to submit its written proposal within the required time.

**Section 46.** As a subcontractor of the Contractor, Subcontractor is to comply with government regulations and prime contract requirements in accordance with 41 CFR 60-1 and 60-2. Specifically, if Subcontractor has 50 or more employees and this Subcontract is $50,000.00 or more, Subcontractor is obligated to develop a written Affirmative Action Program, and adhere to the following guidelines:

  1. Subcontractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin.
  2. Subcontractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. This shall also include, but not be limited to (i) employment, (ii) upgrading, (iii) demotion, (iv) transfer, (v) recruitment or recruitment advertising, (vi) layoff or termination, (vii) rates of pay or other forms of compensation, and (viii) selection for training. This policy shall also apply to disabled veterans, veterans of the Vietnam era, and handicapped individuals.
  3. Subcontractor shall, in all solicitations or advertisement for employees placed by or on Subcontractor's behalf, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.
  4. Subcontractor shall send, to each labor union or representative of workers with which Subcontractor has a collective bargaining agreement or other contract or understanding, the notice to be provided by the Contracting Officer advising the labor union or worker's representative of Subcontractor's commitments under this clause, and post copies of the notice in conspicuous places available to employees and applicants for employment.
  5. Subcontractor shall comply with Executive Order 11246, as amended, and the rules, regulations and orders of the Secretary of Labor. If OFCCP determines that Subcontractor is not in compliance with this clause or any rule, regulation, or order of the Secretary of Labor, this Subcontract may be canceled, terminated, or suspended in whole or in part and Subcontractor may be declared ineligible for further government contracts, under the procedure authorized in Executive Order 11246, as amended. In addition, sanctions may be

151-15700-03                                                                                                    Page 10 of 12

33

imposed and remedies invoked against Subcontractor as provided in Executive Order 11246, as amended, the rules, regulations, and orders of the Secretary of Labor, or as otherwise provided by law.

6. Subcontractor shall furnish all information and reports required by Executive Order 11246, as amended, and by the rules, regulations, and orders of the Secretary of Labor. Standard Form 100 (EEO-1), or any successor form, is the prescribed form to be filed within 30 days following the award unless filed within 12 months preceding the date of award.

7. Subcontractor shall permit access to Subcontractor's books, records, and accounts by the Office of Federal Contract Compliance Programs (OFCCP) for the purposes of investigation to ascertain Subcontractor's compliance with the applicable rules, regulations, and orders.

**Section 47.** As a subcontractor of the Contractor, Subcontractor is to comply with government regulations concerning non-segregated facilities in accordance with Executive Order 11246. Specifically, if this Subcontract is $10,000.00 or more, Subcontractor must adhere to the following guidelines:

1. Subcontractor does not maintain or provide for Subcontractor's employees any segregated facilities at any of Subcontractor's establishments and will not permit Subcontractor's employees to perform their services at any location, under Subcontractor's control, where segregated facilities are maintained.

2. Subcontractor shall not maintain or provide for Subcontractor's employees any segregated facilities at any of Subcontractor's establishments and will not permit Subcontractor's employees to perform their services at any location, under Subcontractor's control, where segregated facilities are maintained.

3. As used in this paragraph, the term "segregated facilities" means any waiting rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, or national origin, because of habit, local custom or otherwise.

4. If the OFCCP determines that Subcontractor is not in compliance with this clause or any rule, regulation, or order of the Secretary of Labor, this Subcontract may be canceled, terminated, or suspended in whole or in part and Subcontractor may be declared ineligible for further government contracts, under the procedure authorized in Executive Order 11246, as amended. In addition, sanctions may be imposed and remedies invoked against Subcontractor as provided in Executive order 11246, as amended, the rules, regulations, and orders of the Secretary of Labor, or as otherwise provided by law.

**Section 48.** In the event of a dispute(s), claim(s) or other matter(s) in question of any kind whatsoever between the parties arising out of or related to the provisions and/or subject matter of this Subcontract or the breach, interpretation or performance thereof, it is agreed that the parties to this Subcontract will attempt to resolve such dispute(s), claim(s) or other matter(s) in question amicably by informal discussions and negotiations within a seven (7)-day period. All such dispute(s), claim(s) or other matter(s) in question which cannot be settled by negotiation among the parties within such time shall, upon the demand of, and at the election of, the Contractor (but not otherwise), be submitted by the parties to arbitration under the Construction Industry Arbitration Rules of the American Arbitration Association. Any notice of demand by Contractor for arbitration shall be filed in writing with the other party or parties to this Subcontract and with the American Arbitration Association and must be made after the dispute, claim or other matter in question has arisen and before the date when institution of legal or equitable proceedings based on such dispute, claim or other matter in question would be barred by the applicable statute of limitations. The applicable laws under which such arbitration shall be held shall be the laws of the state where the contractor is located (unless the law of a different state governs the General Contract, in which case the law that governs the General Contract shall also govern under this Subcontract) except to the extent the Federal Arbitration Act is applicable; and such arbitration shall be held in Lee County, Alabama or another location if mutually agreeable to the parties. This provision to arbitrate shall be specifically enforceable in any court of competent jurisdiction. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction. The Subcontractor agrees that any arbitration instituted under this paragraph shall, at Contractor's election, be consolidated with any other arbitration proceeding involving a common question of fact or law between the Contractor, the Owner, the Architect/Engineer and/or any other subcontractor(s) of any tier performing work in connection with the Project. The Subcontractor shall carry on the Work pending final resolution of any dispute, claim or other matter in question, unless the Contractor has exercised a remedy pursuant to this Subcontract, which has terminated Subcontractor's presence on the Project. The exercise by Contractor of its remedies, pursuant to Section 5 of this Subcontract or otherwise, shall not be conditioned upon resolution, by arbitration or otherwise, of the dispute, claim or other matter in question upon which Contractor bases its decision to exercise any such remedy or remedies. It is hereby agreed that during any arbitration proceedings discovery shall be available and shall be conducted as directed by the arbitrator(s).

**Section 49.** One percent (1%) of the subcontract amount represents specific consideration to the Subcontractor for the indemnification provisions set forth in this Subcontract (including, without limitation, Sections 9 and 12 of this Subcontract) and in the project specifications and the bid documents, if any, and said consideration is deemed paid out of the earliest payments made under this Subcontract. The monetary limitation on the extent of this indemnification shall be one thousand times the amount of this Subcontract such amount may be modified by changes mutually agreed to in writing by Contractor and Subcontractor.

---

151-15700-03

Page 11 of 12

34